## Ex Parte George Tucker.

### No. 3358.  Decided March 31, 1920.

### (220 S. W., 75.)

**1.—Freedom of Speech—Injunction—Slander.**

Section 8 of the Bill of Rights in the Constitution guaranteeing liberty of speech prohibits any injunction against the expression of opinion, though slanderous. The only remedy is punishment for abuse of the right. (P. 337).

**2.—Same—Case Stated.**

At suit of a telephone company the members of a labor organization were enjoined from "vilifying, abusing, or using opprobrious epithets to or concerning" employees of the plaintiff. A party so enjoined was arrested, convicted, and imprisoned for contempt by the court for violating this order by slanderous words used concerning the female telephone operators. Held, that the issuance of injunction against such speech was beyond the power of the court and void, and the party so punished for contempt was entitled to discharge on *habeas corpus*. (Pp. 336-338).

**3.—Same—Ruling Limited.**

The ruling here made is distinguished from cases of verbal or written threats which attempt, by intimidation or coercion, to interfere with natural or contractual rights to labor. (P. 338).

Original application of Tucker to the Supreme Court for writ of *habeas corpus*.

*Campbell, Greenwood & Barton* for relator.—It is submitted that a court of equity has no jurisdiction to restrain a mere libel or slander. 22 Cyc. 900. Marx & Haas, etc., Co. v. Watson, 168 Mo., 133, 56 L. R. A., 951, 90 Am St., 440; Ex Parte Heffron, 162 S. W., 658. Nor does the fact that the false statement made will injure plaintiff in his business or as to his property constitute a sufficient ground for an injunction. 22 Cyc., 901; Francis v. Flinn, 118 U. S., 385; Balliet v. Cassidy, 104 Fed., 704; Kidd v. Horry, 28 Fed., 773; Palmer v. Travers, 20 Fed., 501.

Insolvency of defendant is no ground for interference, for it is obvious that if this remedy be given on the ground of insolvency of defendant the freedom to speak and write which is secured, by the Constitution of Missouri, to all its citizens will be enjoyed by a man able to respond in damages to a criminal act, and denied to one who has no property liable to execution. Life Ass. of Am. v. Boogher, 3 Missouri, 173. As an attribute of citizenship, every person has a right to speak, print and circulate any statement or any speech in any terms he may see fit, subject only to responsibility for dam-

ages, to be ascertained in a civil action brought by any other person who shall claim to have sustained injury thereby, or to a penalty previously declared by legislative enactment to be imposed and enforced by due process in a court of common law. Patterson v. Colorado, 205 U. S., 454, 51 L. Ed., 879, 27 Sup. Ct. Rep., 556, 10 A. & E. Ann. Cas., 689; Life Ass. of America v. Boogher, 3 Mo. App., 173; State ex rel. Liversey v. Civil Dist. Judge, 34 La. Ann., 741; Lindsay & Co. v. Montana Fed. of Labor, 37 Mont., 264, 18 L. R. A., 707, 127 Am. St. Rep., 722, 96 Pac., 127; Marks Clothing Co. v. Watson, 168 Mo., 133, 56 L. R. A., 951, 90 Am. St. Rep., 440, 67 S. W., 391; Martin Fire Arms Co. v. Shields, 171 N. Y., 384, 59 L. R. A. 310, 64 N. E., 163, 15 Parl. Deb., 341; May, Const. Hist. of England; H. C. 1795, 32 Parl. Hist., 419. Again we submit that there is no remedy for the abuse of the right of free speech and freedom of the press except an action at law for damages, or a criminal prosecution. Patterson v. Colorado, 205 U. S., 454, 51 L. Ed., 879, 27 Sup. Ct. Rep., 556, 10 A. & E. Ann. Cas., 689; Fleming v. Newton, 1 H. L. Cas., 363; Story, Const. No. 1885; DeLolme, Const. England, 872; Abbott's Law Dict.; Negley v. Farrow, 60 Md., 176, 45 Am. Rep., 715; Cooley Const. Lim., 441; Kent Com., 24; Gee v. Pritchard, 2 Swanst., 413, 19 Revised Rep., 87; Martin v. Wright, 6 Sim., 297; Seeley v. Fisher, 11 Sim., 581, 10 L. J. Ch. (N. S.), 274; Clark v. Freeman, 11 Beav., 112; 17 L. J. Ch. (N. S.), 132, 12 Jur., 149; Francis v. Flinn, 112 U. S., 385, 30 L. Ed., 165, 6 Sup. Ct. Rep., 1148; Balliet v. Cassidy, 104 Fed., 705; Montgomery-Ward & Co. v. South Dakota R. M. Assn., 150 Fed., 418.

*B. F. Dent, Clay Cotton,* and *Campbell & Sewell,* for respondent, cited: Ex parte Warfield, 50 S. W., 933; Webb v. Cooks, etc., Union, 205 S. W., 465; Gompers v. Buck's Stove & R. Co., U. S., 55 Law Ed., 787.

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the court.

The District Court of Anderson County, in a suit of the Palestine Telephone Company against the International Brotherhood of Electrical Workers' Department, Local No. 388 of Palestine, and other organizations, in Palestine, their officers and members, enjoined the defendants from, among other things, "villifying, abusing, or using approbrious epithets to or concerning any party or parties in the employment of plaintiff," and "from any and all conduct" toward such employees, or concerning them, "which might be calculated to provoke or inspire a breach of the peace."

The relator was an officer and member of one of the defendant organizations.

The plaintiff in the cause, later, filed an affidavit charging him with a violation of the injunction in having applied, in a conversa-

tion with one Duncan slanderous epithets to the female telephone
operators in its employ. The relator, on the hearing, denied having
used the language charged or the making of any remark reflecting
upon such employees, but the court found him guilty of the charge
and adjudged him in contempt. It appears from the record here
that the relator was indicted for slander for the use of the same
language charged against him in the contempt proceedings.

The existence of any power in a court of equity to supervise one
person's opinion of another, or to dictate what one person may
say of another, is plainly and emphatically refuted by the 8th
section of the Bill of Rights.

That section, in part, reads:

"Every person shall be at liberty to speak, write or publish his
opinions on any subject, being responsible for the abuse of that
privilege; and no law shall ever be passed curtailing the liberty of
speech or of the press."

The purpose of this provision is to preserve what we call "Liberty
of speech" and "the freedom of the press," and at the same time
hold all persons accountable to the law for the misuse of that liberty
or freedom. Responsibility for the abuse of the privilege is as fully
emphasized by its language as that the privilege itself shall be free
from all species of restraint. But the use of the privilege, the
provision commands, shall be dealt with in no other way. It is not
to be remedied by denial of the right to speak, but only by appro-
priate penalties for what is wrongfully spoken. Punishment for the
abuse of the right, not prevention of its exercise, is what the pro-
vision contemplates. There can be no liberty in the individual to
speak, without the unhindered right to speak. It cannot co-exist
with a power to compel his silence or fashion the form of his speech.
Responsibility for the abuse of the right, in its nature pre-supposes
freedom in the exercise of the right. It is a denial of the authority,
anywhere, to prevent its exercise.

It has never been the theory of free institutions that the citizen
could say only what courts or Legislatures might license him to
say, or that his sentiments on any subject or concerning any person
should be supervised before he could utter them. Nothing could be
more odious, more violative or destructive of freedom, than a system
of only licensed speech or licensed printing. The experience of the
English nation and some of the American Colonies under the tyranny
of such systems is the reason this provision in the Bill of Rights is
one common to the Constitutions of the American States, and for its
incorporation, in like words, in the First Amendment to the Federal
Constitution. Hallam characterized the liberty of the press, as
finally gained in England, as but exemption from a licenser.

The theory of the provision is that no man or set of men are to
be found, so infallible in mind and character as to be clothed with

an absolute authority of determining what other men may think, speak, write or publish; that freedom of speech is essential to the nature of a free State; that the ills suffered from its abuse are less than would be imposed by its suppression; and, therefore, that every person shall be left at liberty to speak his mind on all subjects, and for the abuse of the privilege be responsible in civil damages and subject to the penalties of the criminal law.

Let it once be admitted that courts may arrogate the authority of deciding what the individual may say and may not say, what he may write and may not write, and by an injunction writ require him to adapt the expression of his sentiments to only what some judge may deem fitting and proper, and there may be readily brought about the very condition against which the constitutional guaranty was intended as a permanent protection. Liberty of speech will end where such control of it begins.

The courts of this country, to their credit, have steadily refused to recognize that the powers of equity may be so used. Pomeroy's Equitable Remedies, Sections 481, 629; Story's Equity, Section 1279; High on Injunctions, Section 1093; Newell on Slander and Libel, Section 265.

There can be no justification for the utterance of a slander. It cannot be too strongly condemned. The law makes it a crime. But there is no power in courts to make one person speak only well of another. The Constitution leaves him free to speak well or ill; and if he wrongs another by abusing this privilege, he is responsible in damages or punishable by the criminal law.

Equity will protect the exercise of natural and contractual rights from interference by attempts at intimidation or coercion. Verbal or written threats may assume that character. When they do, they amount to conduct, or threatened conduct, and for that reason may properly be restrained. Cases of that sort, or of analogous nature, are not to be confounded with this one.

That part of the injunction which attempted to control the relator in his speech, was beyond the power of the court to issue and therefore void.

The relator is discharged.

(Associate Justice Greenwood took no part in this decision.)