STRANG v. BIGGERS et al. (No. 9036.)

(Court of Civil Appeals of Texas. Dallas. May 12, 1923. Rehearing Denied June 16, 1923.)

Constitutional law ⬅90—Not available to restrain libelous publications.

In a suit to enjoin libelous and malicious newspaper publications, alleged to have been in furtherance of conspiracy between defendants to injure plaintiff in his business, where the court found against plaintiff on the issue of conspiracy, it properly dissolved the temporary injunction theretofore granted, since, under Bill of Rights, § 8, guaranteeing liberty of speech and of the press, a court of equity is without power to dictate by injunction what utterances shall be permitted.

Appeal from District Court, Dallas County; Kenneth Force, Judge.

Action by F. W. Strang against Don H. Biggers and others, to enjoin libelous publication. From an order dissolving a temporary writ of injunction, plaintiff appeals. Affirmed.

Nelms & Short, of Dallas, for appellant.
Power, Dryden & Rawlings, of Fort Worth, for appellees.

JONES, C. J. This is an appeal from the district court of Dallas county, Texas, from an order dissolving a temporary writ of injunction that had theretofore been granted on the presentation to the judge of said court by appellant of his verified petition. The said temporary writ of injunction was granted on January 15, 1923, and restrained appellees, all of whom were the publishers or interested in the publication of a certain newspaper published in the city of Fort Worth and known as the Independent Oil & Financial Reporter, except appellee W. T. Brashears, from publishing, circulating, or selling, or causing to be published, circulated, or sold, in the said Independent Oil & Financial Reporter, or in any other newspaper, or in any other manner circulating, any written statement to or concerning appellant F. W. Strang, containing any scurrilous, malicious, or libelous charges against him.

Appellant's petition set out as an exhibit thereto a copy of the articles in said paper alleged to be libelous and malicious. There were also allegations to the effect that the publication of said matter was in furtherance of a conspiracy entered into between the owners and publishers of the paper and the said Brashears, for the purpose of injuring and destroying appellant's good name and financial standing, and injuring and destroying a very lucrative business, as a promoter of oil companies, that he had built up, and to drive from him a large clientage that in the course of his business career had come to him. He alleged that he had been damaged in the sum of $100,000, and, because of the alleged willful and malicious character of the acts and conduct of appellees, he sought recovery of exemplary damages in the sum of $50,000.

Appellant's petition is necessarily very voluminous, and we will not attempt to further set out the substance of same except to say that the allegations of conspiracy were sufficient on the face of the petition to entitle him to the relief sought, and it was doubtless on these allegations that the court granted the temporary injunction.

Appellees, by their verified answer in this motion to dissolve, put appellant to proof on all matters necessary to the further continuance of the temporary writ of injunction. The publication was admitted, and the authenticity of certain documents and correspondence was not denied in the answer, but, aside from this, all the equities of the petition were denied by the sworn answer.

Upon the hearing of the issues thus joined on appellees' motion to dissolve, the court held against appellant, and dissolved the injunction, thus necessarily finding that all matters in the petition in relation to the conspiracy alleged were not sustained by the evidence, and the record before us amply sustains this conclusion of the trial court.

There being thus eliminated the issue of conspiracy, the sole question to be determined on this appeal is whether a court of equity will enjoin the publication and circulation of a libelous newspaper article.

That portion of section 8 of our Bill of Rights applicable to this case is as follows:

"Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing liberty of speech or of the press."

The purpose of this section is to preserve the liberty of speech and the freedom of the press, and to inhibit a court of equity from supervising one person's opinion of another or from dictating what one person may say of another, but, at the same time, to hold all persons accountable for the misuse of this right of free speech. While it is thus guaranteed that this privilege shall be free from all restraining orders that could emanate from a court of equity, still responsibility for the abuse of the privilege is made just as emphatic. He who abuses the great privilege thus guaranteed him by our organic law may be called to answer either in a suit for damages for the injury done by the abuse of the privilege, or by prosecution under the criminal laws of our state for the injury done to society by reason of the abuse of such privilege. Only in this way can freedom of speech be preserved, for freedom of speech will necessarily end when supervision by a court of equity of the expressions and sentiments of the individual is allowed to begin.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Our Supreme Court, speaking through Chief Justice Phillips in Ex parte Tucker, 110 Tex. 335, 220 S. W. 75, very aptly says:

"It has never been the theory of free institutions that the citizen could say only what courts or Legislatures might license him to say, or that his sentiments on any subject or concerning any person should be supervised before he could utter them. Nothing could be more odious, more violative or destructive of freedom, than a system of only licensed speech or licensed printing. The experience of the English nation and some of the American colonies under the tyranny of such systems is the reason this provision in the Bill of Rights is one common to the Constitutions of the American states, and for its incorporation, in like words, in the First Amendment to the federal Constitution. Hallam characterized the liberty of the press, as finally gained in England, as but exemption from a licenser.

"The theory of the provision is that no man or set of men are to be found so infallible in mind and character as to be clothed with an absolute authority of determining what other men may think, speak, write, or publish; that freedom of speech is essential to the nature of a free state; that the ills suffered from its abuse are less than would be imposed by its suppression; and, therefore, that every person shall be left at liberty to speak his mind on all subjects, and for the abuse of the privilege be responsible in civil damages and subject to the penalties of the criminal law.

"Let it once be admitted that courts may arrogate the authority of deciding what the individual may say and may not say, what he may write and may not write, and by an injunction writ require him to adapt the expression of his sentiments to only what some judge may deem fitting and proper, and there may be readily brought about the very condition against which the constitutional guaranty was intended as a permanent protection. Liberty of speech will end where such control of it begins.

"The courts of this country, to their credit, have steadily refused to recognize that the powers of equity may be so used. Pomeroy's Equitable Remedies, §§ 481, 629; Story's Equity, § 1279; High on Injunctions, § 1093; Newell on Slander and Libel, § 265."

To the same effect is Mitchell v. Grand Lodge Free and Accepted Masons of Texas, 56 Tex. Civ. App. 306, 121 S. W. 178; Lindsay & Co. v. Montana Federation of Labor, 37 Mont. 264, 96 Pac. 127, 18 L. R. A. (N. S.) 707, 127 Am. St. Rep. 722; Marx & Haas Jeans Clothing Co. v. Watson et al., 168 Mo. 133, 67 S. W. 391, 56 L. R. A. 951, 90 Am. St. Rep. 440.

Appellant has cited a number of cases in which courts of equity had by injunction restrained parties from indulging in verbal or written threats when same amounted to intimidation or coercion, and prevented those against whom they were directed from exercising their natural or contractual rights; also cases in which parties had conspired together to destroy the good name and the property rights of another and, in furtherance of such conspiracy, were circulating libelous publications. It was the act and conduct of the parties in these cases that called for the restraining power of a court of equity and not the abuse and violation of the right of freedom of speech. Such cases are not analogous to the one at bar, as the trial court found against appellant on the issue of this publication being in furtherance of a conspiracy on the part of appellees.

Believing that the record amply sustains the trial court in dissolving the temporary injunction that had theretofore been granted, this case is affirmed.

Affirmed.