**DALLAS OIL AND GAS, INC., et al., Appellants,**

v.

**Roy M. MOUER et al., Appellees.**

**No. 18798.**

Court of Civil Appeals of Texas, Dallas.

Jan. 8, 1976.

Laurence S. Sanger, Colvin & Jackson, Dallas, for appellants.

John Hill, Atty. Gen., John H. Richards, Asst. Atty. Gen., Austin, for appellees.

GUITTARD, Justice.

The trial court denied an application for a temporary injunction to restrain defendants, individually and as officials of the State of Texas, from interfering with plaintiffs' business of selling fractional interests in oil and gas leases. We affirm.

The petition alleges that the five plaintiffs are corporations engaged in interstate offerings and sales of fractional interests in mineral leases within an exemption from registration provided by Regulation B of the Securities and Exchange Commission under the Securities Act of 1933, 15 U.S.C. § 77c(b) (1970). The financial disclosures required for such offerings, which are less comprehensive than for registered securities, are specified in "Schedule D" of Regulation B. Thus plaintiffs are known as "Schedule D operators." Defendants are Texas Securities Commissioner Roy M. Mouer, Deputy Commissioner James A. Ellisor, Senior Investigator Ray McGregor, and Assistant Attorney General Bill Flanary. The petition alleges that since plaintiffs operate solely in interstate commerce and within SEC regulations, their activities are not subject to regulation under the Texas Securities Act, but that nevertheless defendants have entered into a conspiracy to drive plaintiffs out of business and in the course of such a conspiracy have caused plaintiffs irreparable harm by harassing the plaintiffs and by making unauthorized and wrongful disclosures to the press and public of confidential information obtained from plaintiffs in the course of an investigation into plaintiffs' activities. Plaintiffs pray for damages for tortious interference with plaintiffs' business as well as an injunction to restrain further acts of conspiracy. The trial court denied the temporary injunction generally and then dismissed the action as against Commissioner Mouer and Deputy Commissioner Ellisor.

On this appeal plaintiffs do not assert that the evidence admitted by the trial court was sufficient to require issuance of a temporary injunction, and they do not pray that this court reverse the trial court's order and grant them such relief. Rather, plaintiffs pray for a reversal and remand to the trial court for a new hearing of their application for temporary injunction. Their first point of error complains of the trial court's dismissal of defendants Mouer and Ellisor. In their remaining points of error they complain of the exclusion of evidence at the temporary injunction hearing. They argue that the trial court "abused its discretion in making narrow evidentiary rulings so as to exclude relevant and essential testimony regarding the facts necessary to support the issuance of a temporary injunction."

*Dismissal of Defendants Mouer and Ellisor*

■ On this interlocutory appeal we have no jurisdiction to consider the order dismissing the action as against defendants Mouer and Ellisor. Our jurisdiction is limited by the provisions of Tex.Rev.Civ.Stat.Ann. art. 4662 (Vernon 1952), which gives an aggrieved party a right of appeal from an order granting or refusing a temporary injunction or an order granting or overruling a motion to dissolve a temporary injunction. An appeal under this statute cannot be used as a vehicle to review other interlocutory orders of the trial court. *Hastings Oil Co. v. Texas Co.,* 149 Tex. 416, 234 S.W.2d 389, 398 (1950); *Bloomfield Royalty Corp. v. Carco*

*Investments, Inc.,* 435 S.W.2d 178 (Tex.Civ. App.—Houston [14th Dist.] 1968, writ ref'd n. r. e.).

Under article 4662 we have jurisdiction to review the trial court's order in so far as it denies a temporary injunction against the dismissed defendants as well as the other defendants. However, none of the alleged grounds for injunction apply only to the dismissed defendants. Consequently, unless we find that the cause should be reversed for a further hearing generally, we need not consider whether plaintiffs are entitled to pursue the application for temporary injunction against the dismissed defendants. Thus plaintiffs' first point of error depends on their remaining points, all of which complain of exclusion of evidence at the temporary injunction hearing.

## The News Stories

The trial court's rulings on the evidence points must be considered in the light of the pleadings. Plaintiffs' principal complaint, as stated in their petition, stems from a series of news stories which appeared in the Dallas Morning News on five consecutive days beginning July 20, 1975, under the bylines of reporters Ed Golz and John Cranfill. Plaintiffs allege that these stories are defamatory and false and that they have caused great injury to plaintiffs in their business of selling interests in oil and gas leases. The petition further alleges that this adverse publicity was the result of a conspiracy on the part of defendants to drive plaintiffs out of business, and that the effect of the stories was "to cast a cloud of suspicion on all Schedule D oil and gas operators because of the inaccuracies, misrepresentations, illegal leaks and disclosures of selected portions of confidential material which were in the custody of some of the defendants herein." The petition alleges that defendants committed the "tort of disclosing and divulging confidential information and/or privileged communications to unauthorized third persons." Plaintiffs pray for actual and exemplary damages and also pray that defendants be restrained

temporarily pending suit and thereafter permanently from disclosing such information and committing other acts in furtherance of their conspiracy to drive plaintiffs out of business.

■ The petition alleges that plaintiffs have been damaged by false and defamatory statements in the press, but it does not state grounds for a temporary injunction because injunctive relief is not available as a prior restraint of defamatory publications, however false and however damaging. Such a prior restraint would in itself violate the guaranties of freedom of speech and freedom of press in Tex.Const. art. I, § 8. *Ex parte Tucker,* 110 Tex. 335, 220 S.W. 75 (1920); *Amalgamated Meat Cutters v. Carl's Meat & Provision Co.,* 475 S.W.2d 300, 303 (Tex.Civ.App.—Beaumont 1971, writ dism'd). Therefore, plaintiffs' claim for injunctive relief against further public statements must rest on their allegations of unlawful disclosures by defendants of confidential information.

In this respect plaintiffs rely on the Texas Securities Act, Tex.Rev.Civ.Stat.Ann. art. 581–28 (Vernon 1964), which provides that all information obtained by the Securities Commissioner as a result of issuance of a subpoena or summons requiring testimony and production of records concerning matters which the Commissioner has authority to investigate "shall be treated as confidential by the Commissioner and shall not be disclosed to the public except under order of court." Although there is no evidence here that any of the information in question was obtained as a result of compulsory process for the disclosure of information, we treat the statutory requirement of confidentiality, for the purpose of this appeal, as extending to any information obtained by the Commissioner and his subordinates in the course of investigation from the persons or firms under investigation. We also assume, without deciding, that unauthorized disclosure of information made confidential by article 581–28 would afford ground for injunction on a showing of harm, although

the statute itself provides no sanction against such disclosure.

■ Plaintiffs thus had the burden at the temporary injunction hearing of establishing that defendants threatened irreparable damage to their business by further disclosures of confidential information, and not simply by publication of "inaccuracies and misrepresentations" concerning plaintiffs and other Schedule D operators.

The newspaper stories in question do not show affirmatively that they are based on any disclosures of confidential information by defendants. Copies of the stories are attached to the petition. The information is attributed to various sources in the usual journalistic style. Very little is attributed to sources which can be interpreted as including defendants. The first story states, "This scheme has been unraveled by looking at Federal and State Securities files and talking with investigators, victims and insiders," and comments further: "Some legitimate Schedule D firms are operating, but few in Texas." Schedule D offerings are described in the series of stories as schemes to sell interests in "junk wells" to investors outside the state. The impression is given that most of these offerings are fraudulent schemes to get money from unsuspecting "suckers" in distant states, who are willing to "take a chance" in the hope of sharing in fabulous Texas oil riches, but who seldom, if ever, realize any return from their investments. A characterization of the Schedule D exemption as a "license to steal" is attributed to "government securities investigators." Detailed complaints of individual investors are related, and information is attributed to investigative personnel of the Securities and Exchange Commission and the securities regulation agencies in various states, including Texas. Many operators other than the plaintiffs are named. Some of the plaintiffs are listed as operators against whom "cease and desist" orders have been issued in other states. One of the stories names a "consultant" to plaintiff Dallas Oil and Gas, Inc., as "a Dallas man who, in the words of law enforcement authorities, is an associate of organized crime figures on the West coast." This story gives an account of a personal interview with this "consultant."

Some of the information in these stories is attributed to sources that appear to include the defendants. For instance, a "state securities agent" is quoted as saying, "Most Schedule D promoters would not get approval of their offerings to investors under Texas' fair, just and equitable standards." Likewise, a "Texas Securities Board attorney" is quoted as saying, "Once you get a Schedule D victim hooked, there are so many ways you can skin him." Defendant Mouer, the Securities Commissioner, is given as the source of statements that sales by Schedule D firms in Dallas and Houston are "very substantial," that "most Schedule D offerings are just awful," and that "anybody who's been around the oil and gas business would know that these are ripoffs." Defendants Mouer and Flanary are quoted concerning a "new policy" of the State Securities Board, which will "spell out new, strict standards for regulation of Schedule D firms based in Texas but selling to investors in other states."

The record contains no evidence that any of the information contained in these articles was obtained by defendants from plaintiffs or any other Schedule D operators in the course of an investigation of their affairs. Plaintiffs contend on this appeal that "narrow evidentiary rulings" of the trial judge denied them the opportunity to develop such evidence. We turn now to the points which complain specifically of these rulings.

### Exclusion of Evidence

#### 1. Newsmen's Sources.

■ Plaintiffs' second point complains of the court's refusal to compel newsmen witnesses to reveal their sources. Defendants reply that this ruling was correct because a newsman is privileged to protect the confidentiality of his sources against disclosure

in a civil case under the guaranty of freedom of the press in the First Amendment to the Constitution of the United States. We need not determine the existence and scope of this alleged constitutional privilege because we find that the constitutional issue is not squarely presented in this record.

The only newsman actually called as a witness for plaintiffs was Bill Waldrop, a reporter for the Dallas Times Herald, and not one of the reporters that had written the series in the Dallas Morning News. Waldrop had written a story which appeared in the Times Herald on August 26, 1975, the day before the temporary injunction hearing began. This story states that Guy Wynn, an officer of one of the plaintiffs, who was expected to appear at the hearing the next day, was under guard by the Texas Rangers because of threats on his life. The story states further: "Texas Rangers were notified Sunday of threats against Wynn, an informed source said, after several calls were made to the man and his family."

Toward the close of the hearing, plaintiffs' counsel called Waldrop to the stand, showed him a copy of this story, and called his attention to the reference to "an informed source." Counsel then asked Waldrop "who that informed source was." Waldrop advised the court that he did not choose to answer the question because the information was confidential. His attorney then addressed the court and claimed a constitutional privilege. The court ruled that the witness had the right to refuse to answer under the First Amendment to the United States Constitution.

We find no reversible error in the exclusion of this evidence. Regardless of the question of privilege, the testimony was not shown to be relevant to the issues at the temporary injunction hearing. Plaintiffs made no suggestion that if the witness should identify the "informed source," they would undertake to show that the information concerning the alleged threat on Wynn's life was or could have been obtained in the course of defendants' investigation of the affairs of Schedule D operators rather than from Wynn's own voluntary disclosure to defendants or to others. Wynn himself had previously testified as a witness for plaintiffs, but counsel for plaintiffs had asked him no questions concerning threats on his life. Counsel had interrogated him about certain written statements he had made, but the content of these statements was not offered in evidence. The record indicates that counsel's interrogation of Waldrop was an attempt to rebut a suggestion that plaintiffs had induced Wynn to change his testimony. The judge excluded any further interrogation along this line as irrelevant to the issues at the temporary injunction hearing. Plaintiffs' counsel made no representation to the court that the question concerning the source of Waldrop's information was likely to elicit testimony showing that any of the defendants had disclosed confidential information to the press. Under these circumstances we conclude that the trial court had discretion to exclude this matter at the temporary injunction hearing.

■ Different questions are raised with respect to the proposed testimony of the reporters Golz and Cranfill, who had written the series in the Dallas Morning News, but were not called as witnesses. After sustaining Waldrop's objection to the question put to him concerning identity of his "informed source," the judge announced that this ruling would apply "to any other newspaper reporters presented to this court concerning confidentiality of their sources for the limited purpose of this hearing." Counsel then announced to the court that in that case plaintiffs would not call reporters Golz and Cranfill "because principally we wanted to interrogate them about the sources of the articles and stories that they wrote." Counsel made no bill of exception showing any particular questions he intended to ask Golz or Cranfill. He did file with the clerk a paper styled "Proffer of Proof," which contains, among other matters, the following:

Further, Plaintiffs would respectfully urge the Court to permit Plaintiffs to examine Dallas Morning News reporters Earl Golz and John Cranfill in depth about the manner and means in which they obtained information used to write and publish various articles and stories about Schedule D oil and gas operators and the Plaintiffs in particular, such articles and stories appearing before the filing of this suit and after such filing. Consistent with the law, Plaintiffs desire to interrogate such reporters about the sources of the information for such articles and stories. Since those stories and articles contained derogatory and false information about *all* Schedule D operators, such derogatory and false information had and continues to have a severe adverse impact on Plaintiffs and their businesses.

We hold that no reversible error is shown in this respect. Plaintiffs made no attempt to show the judge that any of the proposed interrogation would have been relevant to the issues at the injunction hearing. Neither at the time of the court's ruling nor in their "Proffer of Proof" did plaintiffs give any indication that their purpose was to show that defendants had disclosed confidential information to the press. Rather, the "Proffer of Proof" indicates that plaintiffs' purpose was to obtain evidence establishing that the derogatory information in the series of stories in the Dallas Morning News was false. Whether plaintiffs are entitled to disclosure of the newsmen's sources in their suit for damages for defamation is a question not presented on this appeal from denial of a temporary injunction. Evidently the proposed inquiry would have gone far beyond any public disclosure of information obtained by defendants in the course of their investigation of plaintiffs and other Schedule D operators.

█ In reviewing the trial court's exclusion of evidence, we are governed by the requirement that the excluded evidence must be shown to be relevant and also by the rule that when testimony offered is partly admissible and partly inadmissible, and the offering party fails to point out the admissible part and offer it separately, he cannot complain if the whole is excluded. *Robinson v. Stuart*, 73 Tex. 267, 11 S.W. 275 (1889); *Hanover Insurance Co. v. Peyson*, 373 S.W.2d 701 (Tex.Civ.App.—Fort Worth 1963, no writ); *Texas Co. v. Andrade*, 52 S.W.2d 1063 (Tex.Civ.App.—Dallas 1932), *aff'd on other grounds, Carter v. Texas Co.*, 126 Tex. 388, 87 S.W.2d 1079 (1935). Here plaintiffs proposed to interrogate the newsmen generally concerning their sources, which, according to the stories themselves, included many sources other than defendants. With respect to information obtained from defendants, plaintiffs did not propose to limit the interrogation to confidential information obtained by defendant from plaintiffs and other Schedule D operators under investigation. Consequently, under the above authorities, no reversible error is shown.

█ In this connection we cannot accept plaintiffs' characterization of the trial court's action in sustaining these objections as "narrow evidentiary rulings." The judge was confronted with a claim of constitutional privilege. Although a newsman may not have a general privilege against disclosure of confidential sources in civil cases, even those courts which have denied the privilege have done so on considerations of balancing the public interest in the free flow of information against other important interests. *Carey v. Hume*, 160 U.S. App.D.C. 365, 492 F.2d 631, 636 (1974); *cf. Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). Disclosure will not be compelled in absence of a concern so compelling as to override the rights of freedom of speech and press. *Baker v. F & F Investment*, 470 F.2d 778, 785 (2d Cir. 1972). In order to weigh properly the interests of plaintiffs in the disclosure sought in the present case against the public interest in full information, the judge was justified in requiring a strict showing that the testimony would be relevant and admissible before

requiring the disclosure. No such showing appears in this record.

## 2. *Exclusion of News Stories*

▮ Plaintiffs' third point complains of the court's refusal to admit in evidence as against defendants McGregor and Flanary individually the news stories attached to the petition and described above. These stories were offered for the limited purpose of showing that they had appeared in a regularly-published newspaper and that they had been disseminated to the public. The stories were before the trial court and were admitted against some of the defendants for the purpose stated, but the judge sustained an objection on behalf of defendants McGregor and Flanary that they were "immaterial and irrelevant" to any issue at the temporary injunction hearing. Plaintiffs now contend that these stories were relevant and material "for the purpose of showing what confidential material was divulged and who divulged it," although they made no such contention in the trial court when the evidence was offered. The stories appear to contain much information that was irrelevant to the issue of disclosure of confidential information by McGregor and Flanary, and plaintiffs made no effort to separate those portions of the stories that bore on that issue. Consequently, under the authorities above cited, plaintiff is in no position to complain of the exclusion.

Plaintiffs further contend that admission of these news stories was necessary to lay a predicate for subsequent inquiry into the alleged breach by defendants McGregor and Flanary of their confidential relationship with plaintiffs. Thus plaintiffs' principal complaint here is not the exclusion of the stories themselves, but rather the denial of plaintiffs' opportunity to establish other facts relevant to their claim for injunctive relief against defendants McGregor and Flanary.

We find no reversible error here because plaintiffs did not establish what they expected to show by the further inquiry. They made no bill of exceptions establish-ing the nature of the proposed inquiry and made no request to the judge for permission to interrogate any witness concerning the newspaper stories for the purpose of such a bill. Since the stories were admitted without objection with respect to the other defendants, it is difficult to see how their exclusion as against McGregor and Flanary actually prevented plaintiffs from pursuing any relevant line of interrogation.

Moreover, the record contains no suggestion that plaintiffs expected to prove that any of the information included in the stories was the same as the information obtained from plaintiffs or from any other Schedule D operators under investigation. In fact, the only investigation of plaintiffs shown by the record occurred on August 5, 1975, after the series by Golz and Cranfill were published, when defendants McGregor and Flanary visited the offices of plaintiff Landmark Petroleum, Inc. Under these circumstances we hold that plaintiffs have not shown that the court's ruling concerning these stories prevented them from presenting any relevant evidence at the temporary injunction hearing.

## 3. *Flanary's Radio Broadcast*

▮ Plaintiffs' fourth point complains of the exclusion of testimony concerning defendant Flanary's appearance on radio station KRLD. They assert that testimony concerning Flanary's statements in this radio interview was necessary to establish the alleged illegal disclosure of confidential information and the substantial adverse impact on plaintiffs' business.

Our review of the record fails to show any questions to Flanary which, if answered favorably to plaintiffs, would have tended to establish these allegations. Only two instances of exclusion of testimony concerning the radio broadcast are mentioned in plaintiffs' brief. In the first, Flanary had testified, in answer to questions by plaintiffs' counsel, that plaintiffs invest "very little of their own money" in the wells that they drill. Counsel then began a question: "In your statement on the KRLD broadcast,

that you had no information—." Defendants interrupted with an objection, which was sustained. The question was never completed for the record. In the second instance, Flanary had testified that none of the plaintiffs had ever registered their Schedule D offerings with the State of Texas and also that some applications for registration had been made by Schedule D operators but none of the offerings had ever been registered. Counsel then asked, "That's a different answer than you gave on the radio talk show, isn't it?" Here another objection was sustained.

■ The evident purpose of both of these questions was to show that Flanary made statements on the broadcast inconsistent with his statements on the stand. However, neither of the questions appeared to concern disclosure of confidential information. In the first instance, counsel apparently intended to show that Flanary had said on the radio that he had no information on matters he was testifying about. The question, as far as it goes, does not appear calculated to elicit an admission that he had disclosed confidential information on the broadcast. The second instance appears to concern matters of public record voluntarily filed with the State Securities Board rather than any confidential information obtained as a result of investigation. Thus neither of the questions to which objections were sustained appears to have had a direct bearing on the issue of disclosure of confidential information. We are not advised what other questions plaintiffs would have propounded to Flanary about the radio interview. In temporary injunction appeals, as in other appeals, a proper bill of exception is necessary to review of the trial court's rulings on matters of evidence. *See Hunt v. Merchandise Mart, Inc.*, 391 S.W.2d 141, 146 (Tex.Civ.App.—Dallas 1965, writ ref'd n. r. e.). Consequently, we find no abuse of discretion in this respect.

4. *Defendants' Statements to Newsmen*

■ Plaintiffs' fifth point of error complains of exclusion of the testimony of defendants Mouer, Flanary, and McGregor about whether they had made certain statements concerning Schedule D operators which had appeared in the series of stories in the Dallas Morning News. The record reveals that counsel for plaintiffs was allowed to ask each of the defendants about statements he had made to the reporters Golz and Cranfill concerning plaintiffs specifically, but that objections were sustained when the questions concerned Schedule D operators in general or "all Schedule D operators." Plaintiffs argue that any statement concerning "all Schedule D operators" necessarily included them, and consequently, that the court erred in excluding this testimony.

We find no error in the court's rulings on these objections. Plaintiffs failed to point out to the judge what bearing the excluded testimony would have had on the issues at the temporary injunction hearing. Counsel explained that any general statement concerning "all Schedule D operators" necessarily included plaintiffs, but even if this point be conceded, the relevancy of the testimony is not established. Statements made by defendants to the press would not afford grounds for injunction unless such statements contained information obtained by defendants in the course of an investigation under the Texas Securities Act and made confidential by the provisions of article 581–28. Plaintiffs wholly failed to prove that defendants had obtained any information from plaintiffs or any other Schedule D operator under investigation which, if disclosed to the public, would have harmed plaintiffs' business. So far as the record shows, all derogatory information which appeared in the news stories in question may have been obtained from sources other than those protected as confidential. In fact, plaintiffs offered no evidence tending to show what information, obtained as a result of investigation under the Act, would have harmed plaintiffs if disclosed to the public.

■ If there is doubt concerning relevancy of evidence, offering counsel must

specify the purpose for which it is offered or other facts necessary to render its admissible. *Willis v. Sanger,* 15 Tex.Civ.App. 655, 40 S.W. 229, 232 (San Antonio 1897, writ ref'd); 1 C. McCormick & R. Ray, Texas Evidence § 21, at 19 (2d ed. 1956). If plaintiffs intended to show that any of the statements made by defendants to the reporters included information obtained from operators under investigation, counsel had the duty to advise the judge that plaintiffs intended to supply this essential element of their proof. As the record stood, the judge had no reason to suppose that any statement by defendants to the press concerning "all Schedule D operators" would have included any information made confidential by article 581–28. Plaintiffs' cross-examination of defendants in this matter indicates to us, as it probably did also to the trial judge, that counsel was merely attempting to fix responsibility on defendants for defamatory statements in the press. Although defendants' responsibility for defamatory statements may have been a relevant inquiry in plaintiffs' action for defamation, it had no bearing on the issue of unauthorized disclosure of confidential information without proof that the information in the statements was, in fact, confidential. Consequently, we find no reversible error in the judge's exclusion of this testimony at the temporary injunction hearing.

### 5. *Attorney-Client Privilege*

■ Plaintiffs' sixth point complains of the court's exclusion of testimony concerning discussions between defendants Flanary and McGregor. The court sustained objections to this testimony on the ground of the attorney-client privilege. Plaintiffs contend that there is no showing that the discussions between Flanary and McGregor were intended to be secret, and, therefore, no basis for the claim of privilege. Plaintiffs assert that their purpose in this line of inquiry was to establish their injury and probable right to injunction regarding harassment, intimidation and threats by the defendants.

We find no abuse of discretion in the court's exclusion of these discussions. The two discussions inquired about took place shortly before and shortly after defendants Flanary and McGregor visited the offices of plaintiff Landmark Petroleum, Inc. on August 5, 1975. Flanary testified that he and McGregor and two other persons decided at lunch on that day to visit the offices of plaintiff Landmark. It was a "joint decision," he said. Counsel for plaintiffs then asked, "Who was in charge of the group?" Counsel for defendants then took the witness on voir dire and brought out that defendant Flanary was acting as attorney for the Securities Board and its employees, including defendant McGregor, and that the defendants had not waived their privilege against disclosure of confidential communications. The objection on the ground of the attorney-client privilege was sustained, and plaintiffs made no representation to the court as to what line of testimony he intended to pursue.

Later, when defendant McGregor was on the stand, he was asked what he and Flanary and the others discussed after the visit to Landmark. Defendants' counsel objected to conversations between Flanary and McGregor and the other employees of the Securities Board on the ground of the attorney-client privilege, and this objection was sustained as to any conversation between Flanary and McGregor. Once again, counsel made no representation to the court concerning his purpose in asking the question, and he did not state for the record any further questions which he proposed to ask defendant McGregor.

Plaintiffs contend that there is no evidence that McGregor was seeking legal advice from Flanary and that both were involved in an investigation in which Flanary was acting as an investigator rather than as an attorney, and that there was no proof that McGregor expressed any desire for confidence and secrecy. We are unwilling to hold that a lawyer is acting outside his

capacity as an attorney when he is acting for his client in investigating a possible violation of law. Neither do we hold that a conference between an attorney and client in the course of such an investigation does not fall within the privilege against disclosure of confidential communications. Here the indicated inquiry was so general that we are unable to determine whether the privilege was applicable. We are also unable to determine whether the proposed inquiry was relevant to any issue at the temporary injunction hearing. The answer to the question to Flanary, "Who was in charge of the group?" could not have been controlling at the temporary injunction hearing, and the record does not show what further line of interrogation would have been pursued if the judge had allowed it. Likewise, the question to McGregor concerning the "nature of the discussion" between McGregor and Flanary after the Landmark visit was extremely general. Some of the discussion at that time may have been within the privilege and some may not have been. Here McGregor was the client, and McGregor was claiming the privilege. We are unable to determine whether the privilege was applicable, or whether the proposed line of inquiry was relevant to the issue at the hearing, without more specific information in the record concerning the questions which plaintiffs intended to ask. In the absence of a bill of exception showing more specifically what the proposed inquiry would have been, we find no reversible error in the judge's ruling.

### Jurisdiction of Suit against Flanary and McGregor

Defendants have filed a cross-point in which they contend that the judge erred in failing to dismiss defendants Flanary and McGregor from the action upon their plea to the jurisdiction. We cannot consider this point because, as we have pointed out with respect to the dismissal of defendants Mouer and Ellisor, our jurisdiction on this interlocutory appeal is limited to the propriety of temporary injunctive relief.

Affirmed.