COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-233-CV
 
 
TEXAS 
MUTUAL INSURANCE COMPANY                                 APPELLANT
 
V.
 
SURETY 
BANK, N.A. INDIVIDUALLY AND                                   APPELLEE
D/B/A 
SURETY PREMIUM FINANCE
 
 
------------
 
FROM 
THE 67TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
 
I. Introduction
 
        In 
this accelerated, interlocutory appeal, Appellant Texas Mutual Insurance Company 
(“Texas Mutual”) challenges a single provision in a temporary injunction 
obtained by Appellee Surety Bank, N.A., individually and doing business as 
Surety Premium Finance (“Surety Bank”).  Texas Mutual claims that the 
challenged temporary injunction provision constitutes a prior restraint on 
speech that is unconstitutional under article one, section eight of the Texas 
Constitution and under the First Amendment of the United States Constitution.  
See Tex. Const. art. I § 
8; U.S. Const amend. I.  
Because we hold that the challenged provision is unconstitutional, we will 
modify the trial court’s temporary injunction to delete it; as modified, we 
will affirm the temporary injunction.
II. Factual and 
Procedural Background
        Texas 
Mutual is an insurance company that issues workers’ compensation insurance 
policies to employers. Surety Bank provides financing for insurance policies, 
including workers’ compensation insurance.
        As 
a result of a dispute concerning whether Texas Mutual was required to refund 
unearned premiums Surety Bank had paid to Texas Mutual on behalf of a particular 
company, Surety Bank sued Texas Mutual.  Because of this litigation, Texas 
Mutual decided to cease doing business with Surety Bank.  In accordance 
with this decision, Texas Mutual notified insurance agents in Texas by a faxed 
letter that Texas Mutual would no longer accept Surety Bank premium finance 
agreements.[1]  Surety Bank then filed the 
present lawsuit against Texas Mutual, alleging tortious interference with 
prospective business relationships and business disparagement.
        In 
connection with its lawsuit, Surety Bank sought a temporary injunction.  
Following an evidentiary hearing, the trial court entered a June 25, 2004 
temporary injunction enjoining Texas Mutual from “(1) refusing to issue 
insurance or canceling insurance due to the purchasers’ financing the premiums 
in part or in whole through Surety [Bank]; (2) discouraging the financing of the 
purchase of insurance through Surety [Bank]; or (3) defaming Surety [Bank] in 
any way.”  Texas Mutual moved to modify the temporary injunction, arguing 
that provisions two and three of the injunction, which prohibited Texas Mutual 
from “discouraging” Surety Bank financing and from “defaming Surety [Bank] 
in any way,” were vague, unconstitutional, and should be removed from the 
temporary injunction.  The trial court granted Texas Mutual’s motion to 
modify the injunction to the extent that it modified the temporary injunction to 
delete provision two and to alter provision three as set forth below and to 
renumber it to become provision two:
 
Defendant Texas Mutual Insurance Company, its officers, agents, and employees 
are enjoined from . . . (2) Communicating or implying to any insurance agent or 
broker or any business known to be a customer or potential customer of Surety, 
or an entity or individual who utilizes Surety’s financial services or such 
services of other financial companies or recommends such services to others 
(including all employees and agents of all of the foregoing businesses or 
individuals) that Surety is in some sort of financial trouble or that Surety has 
committed a misfeasance or malfeasance or was somehow unfit or unable to finance 
insurance premiums.[2]
 
Texas 
Mutual perfected this interlocutory appeal challenging the constitutionality of 
this modified provision.
III. 
Constitutionality of Temporary Injunction’s Second Provision
        Texas 
Mutual argues that the temporary injunction’s second provision is 
unconstitutional as a prior restraint on speech.  Surety Bank does not 
dispute that the temporary injunction does prospectively enjoin speech, but 
contends that the enjoined speech is private, commercial speech subject to a 
lower level of constitutional protection.[3]  
Because Texas Mutual does not challenge provision one of the temporary 
injunction and because Surety Bank does not dispute that modified provision two 
of the temporary injunction constitutes a prior restraint on speech, we accept 
the trial court’s unchallenged findings of fact that Surety Bank satisfied the 
elements necessary to obtain a temporary injunction.  See Butnaru v. 
Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002) (recognizing litigant must 
plead and prove three specific elements to obtain a temporary injunction: (1) a 
cause of action against the defendant; (2) a probable right to the relief 
sought; and (3) a probable, imminent, and irreparable injury in the interim).  
Therefore, we address whether the prior restraint on speech set forth in 
provision two of the temporary injunction is unconstitutional in light of the 
facts supporting issuance of the injunction.
        A 
prior restraint on speech is an “administrative and judicial order[] forbidding 
certain communications when issued in advance of the time that such 
communications are to occur.”  Alexander v. United States, 509 
U.S. 544, 550, 113 S. Ct. 2766, 2771 (1993).  Article one, section eight of 
the Texas Constitution provides that “[e]very person shall be at liberty to 
speak, write or publish his opinions on any subject, being responsible for the 
abuse of that privilege . . . .” Tex. Const. art. I § 8.  This 
portion of the Texas Constitution “provides greater rights of free expression 
than its federal equivalent.” Davenport v. Garcia, 834 S.W.2d 4, 10 
(Tex. 1992).  Thus, prior restraints on speech are presumptively 
unconstitutional.  See id.; San Antonio Express-News v. Roman, 
861 S.W.2d 265, 267 (Tex. App.—San Antonio 1993, orig. proceeding).
        The 
Texas Constitution protects the right to speak, even to speak defamatory words, 
although damages are recoverable for such defamatory speech.  Ex parte 
Tucker, 220 S.W. 75, 76, 110 Tex. 335, 337-38 (1920).  In Tucker, 
the supreme court explained this concept:
  
There can be no justification for the utterance of a slander.  It cannot be 
too strongly condemned.  The law makes it a crime.  But there is no 
power in courts to make one person speak only well of another.  The 
Constitution leaves him free to speak well or ill; and if he wrongs another by 
abusing this privilege, he is responsible in damages or punishable by the 
criminal law.
 
Id. 
 “It is well settled that Texas courts will not grant injunctive relief in 
defamation or business disparagement actions if the language enjoined evokes no 
threat of danger to anyone, even though the injury suffered often cannot easily 
be reduced to specific damages.”  Brammer v. KB Home Lone Star, L.P., 
114 S.W.3d 101, 107 (Tex. App.—Austin 2003, no pet.).  Thus, even 
defamatory statements, with the exception of those that threaten others, are 
provided constitutional protection in most cases.  See Hajek v. Bill 
Mowbray Motors, Inc., 647 S.W.2d 253, 255 (Tex. 1983) (dissolving temporary 
injunction as violative of article one, section eight of Texas Constitution); Brammer, 
114 S.W.3d at 106-09 (modifying temporary injunction to delete portions 
enjoining speech based on content); Markel v. World Flight, Inc., 938 
S.W.2d 74, 79-81 (Tex. App.—San Antonio 1996, no writ) (holding temporary 
injunction unconstitutional prior restraint on free expression); Pirmantgen 
v. Feminelli, 745 S.W.2d 576, 578-79 (Tex. App.—Corpus Christi 1988, no 
writ) (holding temporary injunction violated Texas Constitution); Strang v. 
Biggers, 252 S.W. 826, 827 (Tex. Civ. App.—Dallas 1923, no writ) 
(affirming dissolution of temporary injunction that violated appellee’s 
freedom of speech); see also Stansbury v. Beckstrom, 491 S.W.2d 
947, 947-50 (Tex. Civ. App.—Eastland 1973, no writ) (dissolving temporary 
injunction infringing on appellant’s freedom of speech).
        Simply 
put, it is generally unconstitutional for courts to require one to acquire 
permission to speak before speaking:
  
It has never been the theory of free institutions that the citizen could say 
only what courts or legislatures might license him to say, or that his 
sentiments on any subject or concerning any person should be supervised before 
he could utter them.  Nothing could be more odious, more violative or 
destructive of freedom, than a system of only licensed speech or licensed 
printing.
  
 
Tucker, 
220 S.W. at 76.  Accordingly, an injunction enjoining future speech is 
permissible under article one, section eight of the Texas Constitution only if 
the trial court makes specific findings supported by the evidence that (1) an 
imminent and irreparable harm to the judicial process will deprive litigants of 
a just resolution of their dispute, and (2) the judicial action represents the 
least restrictive means to prevent that harm.  See Davenport, 834 
S.W.2d at 10.
        We 
begin our analysis under the second prong set forth in Davenport; that 
is, we examine the terms of the injunction to determine whether the 
“injunctive relief granted encompasses the least restrictive means of 
protecting against the alleged harmful effect.”  See Ex parte Tucci, 
859 S.W.2d 1, 6 (Tex. 1993).  The temporary injunction enjoins Texas Mutual 
from “communicating or implying” that Surety Bank is “in some sort of 
financial trouble, has “committed a misfeasance or malfeasance,” or “was 
somehow unfit or unable to finance insurance premiums.”  Texas Mutual 
cannot “communicat[e] or imply[]” the above information to “any insurance 
agent or broker,” “any business known to be a customer or potential customer 
of Surety,” “an entity or individual who utilizes Surety’s financial 
services or such services of other financial companies,” any entity who 
“recommends such services to others,” or to any “employees and agents of 
[] the foregoing businesses or individuals.”  The temporary 
injunction’s restraint on prospective speech is, on its face, too broad; it in 
effect prohibits Texas Mutual from communicating with anyone concerning Surety 
Bank and restricts even truthful communications.  Provision two clearly is 
not the least restrictive means of protecting against the harm alleged by Surety 
Bank—tortious interference with prospective business relationships and 
business disparagement.  See, e.g., id.
        Surety 
Bank, citing Amalgamated Acme Affiliates, Inc., v. Minton and Karamchandani 
v. Ground Technology, Inc., argues that prior restraints on speech are 
permissible when the enjoined speech is commercial speech.  Amalgamated 
Acme Affiliates, Inc., v. Minton, 33 S.W.3d 387 (Tex. App.—Austin 2000, no 
pet.); Karamchandani v. Ground Technology, Inc., 678 S.W.2d 580 (Tex. 
App.—Houston [14th Dist.] 1984, no writ).  This case, however, is 
distinguishable from both Amalgamated Acme and Karamchandani.
        In 
Amalgamated Acme, employees of University Sports called between forty and 
fifty of the plaintiff’s customers, provided false information to the 
customers, and urged them to withhold payments owed to the plaintiff.  As a 
result, several customers stopped paying the plaintiff. Amalgamated Acme, 
33 S.W.3d at 391.  Employees of University Sports also called the 
plaintiff’s customers, falsely identified themselves as the plaintiff, and 
provided false information to the customers.  Id.  Because 
University Sports’s “speech” was “intended to end contractual 
relationships between [the plaintiff] and his customers, or to prevent 
contractual relationships with potential customers,” the appellate court 
agreed that it was commercial speech.  Id. at 394.  Justice Bea 
Ann Smith explained that “[t]o enjoy any protection, commercial speech must 
not be false or misleading.”  Id.  Because University 
Sports’s speech was both false and misleading, the appellate court held that 
the trial court properly enjoined University Sports from making in the future 
the same communications the plaintiff proved it had made in the past.  That 
is, the trial court enjoined University Sports from repeating to more known 
customers of the plaintiff and known potential customers of the plaintiff the 
very fraudulent and false information plaintiff proved University Sports had 
been disseminating to plaintiff’s customers.  Id.
        Here, 
unlike in Amalgamated Acme, Surety Bank has not alleged or established 
that Texas Mutual made false statements.  Instead, Surety Bank argued in 
its motion seeking a temporary injunction that Texas Mutual’s letter “gave 
no reason for Defendant’s action [as of June 1, 2004 ceasing to accept premium 
financing agreements from Surety Bank].  Thus, the agents were given the 
impression that Defendant’s decision to refuse to issue insurance to those 
financing their purchase through Plaintiff was due to some misfeasance.”  
The “impression” that a reader may draw from Texas Mutual’s letter is an 
issue that will be resolved at trial.  But we decline to hold here that a 
possible negative interpretation or impression of factually accurate words 
renders speech false or misleading.  Because the record before us does not 
establish that the speech at issue here was false or misleading, Amalgamated 
Acme is not on point.  Also because the record before us does not 
establish that the speech at issue here was false or misleading, its 
classification as commercial speech or noncommercial speech is not controlling.
        In 
Karamchandani, appellant was a shareholder in appellee, a 
corporation.  678 S.W.2d at 581.  Appellant had filed suit seeking 
liquidation of appellee’s assets, and subsequently two of appellee’s 
customers received letters with copies of appellant’s suit for liquidation 
attached.  Id.  Appellee sought a temporary injunction to 
prohibit appellant—who as a forty percent shareholder had access to 
information concerning appellee’s clients—from sending anymore letters to 
appellee’s clients.  Id.  The trial court granted a temporary 
injunction to preserve the status quo pending the outcome of the liquidation 
suit.  Id. at 582.  The court of appeals upheld the injunction, 
noting,
  
[t]here was evidence which the trial court could have concluded indicated that 
the letters to appellee’s clients were written and sent by appellant.  
They were sent to appellee’s major clients and stated that liquidation of 
appellee’s business assets was being sought. The potential harm is 
obvious.  The injunction was narrow and precise and prohibited only the 
sending of letters which could have caused irreparable harm and would have 
disturbed the status quo.
 
Id.
        Here, 
pursuant to provisions of the temporary injunction that are unchallenged here, 
Texas Mutual has already faxed to all insurance agents who received its original 
letter a follow up letter stating that “Texas Mutual is accepting and will 
continue to accept applications for insurance using Surety Premium Financing as 
the source of funding.”   And the parties agree that Texas Mutual 
has been and continues to accept applications for insurance using Surety Bank 
pending the outcome of the underlying litigation.  Thus, the narrow 
temporary injunction in Karamchandani, implemented to preserve the status 
quo, does not support the broad injunction entered in this case, especially when 
other provisions of the injunction have effectively ensured maintenance of the 
status quo.
        We 
hold that provision two in the trial court’s July 15, 2004 order on Texas 
Mutual’s motion to modify the temporary injunction is unconstitutional under 
article one, section eight of the Texas Constitution as a prior restraint on 
speech.  See Alexander, 509 U.S. at 550, 113 S. Ct. at 2771; Tucker, 
220 S.W. at 76; Markel, 938 S.W.2d at 79-81.  We sustain Texas 
Mutual’s sole issue on appeal.[4]
IV. Conclusion
        Having 
sustained Texas Mutual’s sole issue on appeal, we modify the trial court’s 
July 15, 2004 modified temporary injunction by deleting the following language,
   
(2) Communicating or implying to any insurance agent or broker or any business 
known to be a customer or potential customer of Surety, or an entity or 
individual who utilizes Surety’s financial services or such services of other 
financial companies or recommends such services to others (including all 
employees and agents of all of the foregoing businesses or individuals) that 
Surety is in some sort of financial trouble or that Surety has committed a 
misfeasance or malfeasance or was somehow unfit or unable to finance insurance 
premiums.
 
We 
affirm the trial court’s striking of provision three in its June 25, 2004 
temporary injunction, and as modified, we affirm the June 25, 2004 temporary 
injunction and the July15, 2004 order modifying it.
  
 
                                                                  SUE 
WALKER
                                                                  JUSTICE
   
 
PANEL 
A:   HOLMAN, WALKER, and MCCOY, JJ.
 
DELIVERED: 
January 6, 2005

NOTES
1.  
Texas Mutual’s letter provided:
 
Effective June 1, 2004, Texas Mutual Insurance Company will no longer accept 
premium finance agreements from Surety Bank, (doing business as Surety Premium 
Finance).  If we receive a premium finance agreement issued by Surety after 
this month, we will return the funds to Surety, and we will advise the agent to 
find funding from another source for the premium.
Thank 
you for your cooperation in this matter.  If you have any questions, please 
contact your Texas Mutual® marketing representative.
We 
appreciate the business you have given us, and we assure you that we will 
continue to earn your business.
 
2.  
The trial court did not alter provision one of the temporary injunction 
providing that Texas Mutual may not “refus[e] to issue insurance or cancel[] 
insurance due to the purchasers’ financing the premiums in part or in whole 
through Surety,” and Texas Mutual does not challenge this provision here.
3.  
At the hearing on Texas Mutual’s motion to modify the temporary injunction, 
Surety Bank conceded that the injunction enjoined prospective speech but argued 
that Texas Mutual could seek permission of the trial court prior to making such 
communications, “if . . . he [Texas Mutual] wants to communicate it, then he 
can come ask the Court.”
4.  
In light of our holding regarding the Texas Constitution, we need not consider 
whether provision two of the July 15, 2004 order violates the federal 
constitution.  See Tex. R. 
App. P. 47.1.