# IN THE SUPREME COURT OF TEXAS

════════════
No. 13-0043
════════════

ROBERT KINNEY, PETITIONER,

v.

ANDREW HARRISON BARNES (A/K/A A. HARRISON BARNES, A. H. BARNES, ANDREW H. BARNES, HARRISON BARNES), BCG ATTORNEY SEARCH, INC., EMPLOYMENT CROSSING, INC. AND JD JOURNAL, INC., RESPONDENTS

════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS
════════════════════════════════════════════════════

**Argued January 9, 2014**

JUSTICE LEHRMANN delivered the opinion of the Court.

A hallmark of the right to free speech under both the U.S. and Texas Constitutions is the maxim that prior restraints are a heavily disfavored infringement of that right. So great is our reticence to condone prior restraints that we refuse to allow even unprotected speech to be banned if restraining such speech would also chill a substantial amount of protected speech. This danger is before the Court today, as we are asked whether a permanent injunction restraining future speech is a constitutionally permissible remedy for defamation following an adjudication on the merits. On the one hand, it is well settled that defamation is an abuse of the privilege to speak freely; our

holding today does not disturb that. On the other, it is also well settled that prior restraints are rarely permitted in Texas due to their capacity to chill protected speech.

The issue at hand is more specifically presented as whether a permanent injunction is an unconstitutional prior restraint where the injunction (1) requires the removal or deletion of speech that has been adjudicated defamatory, and (2) prohibits future speech that is the same or similar to the speech that has been adjudicated defamatory. We hold that, while the former does not enjoin future speech and thus is not a prior restraint, the latter constitutes a prior restraint that impermissibly risks chilling constitutionally protected speech. Because the court of appeals failed to recognize this distinction in affirming summary judgment for the defendant, we reverse the court of appeals' judgment and remand the case to the trial court for further proceedings.

## I. Background

BCG Attorney Search, Inc. employed Robert Kinney as a legal recruiter until 2004, when he left and started a competing firm. Several years later, BCG's President, Andrew Barnes, posted a statement on the websites JDJournal.com and Employmentcrossing.com implicating Kinney in a kickback scheme during his time with BCG. Describing allegations in a lawsuit Barnes had previously filed against Kinney in California, Barnes stated:

> The complaint also alleges that when Kinney was an employee of BCG Attorney Search in 2004, he devised an unethical kickback scheme, attempting to pay an associate under the table at Preston, Gates and Ellis (now K&L Gates) to hire one of his candidates. Barnes says that when he discovered this scheme, he and other BCG Attorney Search recruiters immediately fired Kinney. The complaint in the action even contains an email from Kinney where he talks about paying the bribe to an associate at Preston Gates in return for hiring a candidate.

2

The posted statements prompted Kinney to sue Barnes, BCG, and two other companies Barnes owned (Employment Crossing, Inc. and JD Journal, Inc.) for defamation in Travis County. Kinney did not seek damages in his petition, requesting only a permanent injunction following a trial on the merits.[1] Specifically, Kinney sought an order requiring Barnes to (a) remove the allegedly defamatory statements from Barnes's websites, (b) contact third-party republishers of the statements to have them remove the statements from their publications, and (c) conspicuously post a copy of the permanent injunction, a retraction of the statements, and a letter of apology on the home pages of Barnes's websites for six months. Kinney has since abandoned his demand for an apology and retraction.

Barnes filed a motion for summary judgment on the ground that the relief sought would constitute an impermissible prior restraint on speech under the Texas Constitution. The trial court granted the motion, and the court of appeals affirmed without addressing whether Barnes's statements were defamatory. We too will limit our review to the constitutionality of Kinney's requested relief and assume only for purposes of that analysis that the complained-of statements are defamatory.

## II. Discussion

"Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of

---

[1] According to Barnes, Kinney previously filed and nonsuited a defamation suit against the same defendants seeking monetary damages but no injunctive relief.

3

speech or of the press." TEX. CONST. art. I, § 8. Enshrined in Texas law since 1836,[2] this fundamental right recognizes the "transcendent importance of such freedom to the search for truth, the maintenance of democratic institutions, and the happiness of individual men." TEX. CONST. art. I, § 8 interp. commentary (West 2007). Commensurate with the respect Texas affords this right is its skepticism toward restraining speech. While abuse of the right to speak subjects a speaker to proper penalties, we have long held that "pre-speech sanctions" are presumptively unconstitutional. *Davenport v. Garcia*, 834 S.W.2d 4, 9 (Tex. 1992); *see also Ex parte Tucker*, 220 S.W. 75, 76 (Tex. 1920).

The First Amendment of the U.S. Constitution is similarly suspicious of prior restraints, which include judicial orders "forbidding certain communications" that are "issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (citation and internal quotation marks omitted). The U.S. Supreme Court has long recognized that "prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976); *see also id.* ("If it can be said that a threat of criminal or civil sanctions after publication 'chills' speech, prior restraint 'freezes' it at least for the time." (quoting A. BICKEL, THE MORALITY OF CONSENT 61 (1975))). As such, they "bear[] a heavy presumption against [their] constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). This cornerstone of First

---

[2] The provision as currently worded dates back to 1876, but a similar provision was part of the 1836 Texas Independence Constitution. *Davenport v. Garcia*, 834 S.W.2d 4, 7–8 (Tex. 1992).

4

Amendment protections has been reaffirmed time and again by the Supreme Court,[3] this Court,[4] Texas courts of appeals,[5] legal treatises,[6] and even popular culture.[7]

Nevertheless, freedom of speech is "not an absolute right, and the state may punish its abuse." *Near v. Minnesota*, 283 U.S. 697, 708 (1931) (citation and internal quotation marks omitted). To that end, the common law has long recognized a cause of action for damages to a person's reputation inflicted by the publication of false and defamatory statements. *Neely v. Wilson*, 418 S.W.3d 52, 60 (Tex. 2013) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 11 (1990)); *see also Ex parte Tucker*, 220 S.W. at 76 ("There can be no justification for the utterance of a slander. It cannot be too strongly condemned."). The U.S. Supreme Court and this Court have been firm in the conviction that a defamer cannot use her free-speech rights as an absolute shield from punishment.

---

[3] *See, e.g.*, *Stuart*, 427 U.S. at 561 ("[I]t is . . . clear that the barriers to prior restraint remain high unless we are to abandon what the Court has said for nearly a quarter of our national existence and implied throughout all of it."); *N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971) (per curiam).

[4] *Davenport*, 834 S.W.2d at 9; *Hajek v. Bill Mowbray Motors, Inc.*, 647 S.W.2d 253, 255 (Tex. 1983) (per curiam); *Ex parte Price*, 741 S.W.2d 366, 369 (Tex. 1987) (Gonzalez, J., concurring) ("Prior restraints . . . are subject to judicial scrutiny with a heavy presumption against their constitutional validity.").

[5] *Tex. Mut. Ins. Co. v. Sur. Bank, N.A.*, 156 S.W.3d 125, 128 (Tex. App.—Fort Worth 2005, no pet.) ("[P]rior restraints on speech are presumptively unconstitutional."); *San Antonio Express–News v. Roman*, 861 S.W.2d 265, 267 (Tex. App.—San Antonio 1993, orig. proceeding) (per curiam).

[6] *See* Erwin Chemerinsky, *Injunctions in Defamation Cases*, 57 SYRACUSE L. REV. 157, 173 (2007) ("[N]ever in the 216 year history of the First Amendment has the Supreme Court found it necessary to uphold a prior restraint in a defamation case . . . ."); A. Siegel, *Injunctions for Defamation, Juries, and the Clarifying Lens of 1868*, 56 BUFF. L. REV. 655, 656 (2008).

[7] THE BIG LEBOWSKI (PolyGram Filmed Entertainment & Working Title Films 1998) ("For your information, the Supreme Court has roundly rejected prior restraint.").

This case asks us to examine these conflicting principles, and involves a two-part inquiry. First, we examine whether a permanent injunction against defamatory speech, following a trial on the merits, is a prior restraint. Kinney contends that such a "post-trial remedial injunction" is not properly characterized as a prior restraint at all, much less one that is constitutionally impermissible. Barnes maintains that a permanent injunction against future speech, whether issued before or after the conclusion of a defamation trial, is necessarily a prior restraint. If the permanent injunction is a prior restraint, we must then determine whether it overcomes the heavy presumption against its constitutionality. Kinney argues that defamatory speech is not protected and that enjoining its continuation is therefore permissible. Barnes responds that the presumption cannot be overcome because such injunctions pose too great a risk to free speech.

We first acknowledge the parties' arguments regarding whether Article I, Section 8 of the Texas Constitution affords greater free-speech protection than the First Amendment of the U.S. Constitution. *Compare* TEX. CONST. art. I, § 8 ("Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press."), *with* U.S. CONST. Amend. 1 ("Congress shall make no law . . . abridging the freedom of speech, or of the press . . . ."). Barnes argues that we have consistently interpreted Texas's constitutional recognition of free-speech rights more broadly than its federal counterpart. *See Davenport*, 834 S.W.2d at 8–9 ("[O]ur free speech provision is broader than the First Amendment."). In *Operation Rescue–National v. Planned Parenthood of Houston and Southeast Texas, Inc.*, however, we clarified that "Article 1, Section 8 *may* be more protective of speech in some instances than the First Amendment, but if it is, it must

6

be because of the text, history, and purpose of the provision, not just simply *because*." 975 S.W.2d 546, 559 (Tex. 1998) (first emphasis added) (internal citation omitted).  We further concluded: "We know of nothing to suggest that injunctions restricting speech should be judged by a different standard under the state constitution than the First Amendment." *Id.*

We need not determine whether the Texas Constitution provides greater protection than the First Amendment on the specific issue presented to us, as the U.S. Supreme Court has not definitively addressed it.  Rather, we reiterate the unremarkable proposition that in interpreting our own constitution, we "should borrow from well-reasoned and persuasive federal procedural and substantive precedent when this is deemed helpful, but should never feel compelled to parrot the federal judiciary." *Davenport*, 834 S.W.2d at 20.  We look to federal cases for guidance, not as binding authority.  *Id.*

## A. Classification of a Post-Adjudication Permanent Injunction Against Defamatory Speech as a Prior Restraint

The first issue we must dispose of is whether a permanent injunction prohibiting future speech related to statements that have been adjudicated defamatory is a prior restraint.  If it is not, then our constitutional concerns regarding the use of prior restraints are inapplicable.  This question highlights the distinction Kinney emphasizes between permanent injunctions on speech adjudicated defamatory and pretrial temporary injunctions on allegedly defamatory speech.  Kinney argues that this distinction is meaningful.  We disagree—as to the question presented, it is a distinction without a difference.

We have squarely held that a temporary injunction prohibiting allegedly defamatory speech is an unconstitutional prior restraint, but we have not specifically addressed the propriety of a post-adjudication permanent injunction in a defamation case. *See Hajek v. Bill Mowbray Motors, Inc.*, 647 S.W.2d 253, 255 (Tex. 1983) (per curiam). In *Hajek*, the plaintiff sought and obtained a temporary injunction restraining the defendant from driving his car around the community with a message painted on all four sides that Bill Mowbray Motors sold him a "lemon." *Id.* at 254. We reversed, holding that the injunction was a prior restraint in violation of the Texas Constitution. *Id.* at 255. Accordingly, we overturned the lower courts' decisions granting the injunction.

Our decision in *Hajek* rested on the well-settled legal principles laid out in *Ex parte Tucker*. In that case, the trial court enjoined the members of a worker's union from "vilifying, abusing, or using . . . epithets" against their employer. 220 S.W. 75, 75 (Tex. 1920). In overturning the injunction, we relied on the dichotomy between the Texas Constitution's affirmative grant of the liberty to speak without fear of curtailment and the commensurate responsibility inherent in that right. *Id.* at 76. We stated that "the abuse of the privilege . . . is not to be remedied by denial of the right to speak, but only by appropriate penalties for what is wrongfully spoken." *Id.* Accordingly, we held that the injunction was beyond the power of the trial court to issue. *Id.*

Kinney contends that *Hajek* and *Tucker* classify as prior restraints only temporary injunctions against speech that is alleged, but not proven, to be defamatory, and that these cases therefore do not apply to a post-adjudication permanent injunction. But our holding that the injunctions were prior restraints did not rest on their pretrial issuance. Rather, we took issue with the trial courts' decision

8

to remedy the defendants' abuse of their liberty to speak by preventing their future exercise of that liberty. *Id.*; *Hajek*, 647 S.W.2d at 255.

In this case, Kinney's request for injunctive relief may be broken down into two categories. First, as reflected in the pleadings, Kinney would have the trial court order Barnes to remove the statements at issue from his websites (and request that third-party republishers of the statements do the same) upon a final adjudication that the statements are defamatory. Such an injunction does not prohibit future speech, but instead effectively requires the erasure of past speech that has already been found to be unprotected in the context in which it was made. As such, it is accurately characterized as a remedy for one's abuse of the liberty to speak and is not a prior restraint. *See Hajek*, 647 S.W.2d at 255.[8]

As Kinney confirmed at oral argument, however, his request is not so limited. Kinney would also have the trial court permanently enjoin Barnes from making similar statements (in any form) in the future. That is the essence of prior restraint and conflates the issue of whether an injunction is a prior restraint with whether it is constitutional. As Professor Chemerinsky has aptly explained:

> Courts that have held that injunctions are not prior restraints if they follow a trial, or if they are directed to unprotected speech, are confusing the question of whether the injunction is a prior restraint with the issue of whether the injunction should be allowed. Injunctions are inherently prior restraints because they prevent future speech.

---

[8] Of course, the requirements for injunctive relief still must be met. A plaintiff must show that damages are inadequate or cannot otherwise be measured by any pecuniary standard. *Town of Palm Valley v. Johnson*, 87 S.W.3d 110, 111 (Tex. 2001) (per curiam). And aside from constitutional free-speech considerations, we also express no opinion on the propriety of an injunction that would order Barnes to seek removal of the statements from websites over which he has no control. We hold only that the constitutional concerns applicable to prior restraints are not present when the injunction is limited to requiring removal of a published statement that has been adjudicated defamatory.

Erwin Chemerinsky, *Injunctions in Defamation Cases*, 57 SYRACUSE L. REV. 157, 165 (2007); *see also Oakley, Inc. v. McWilliams*, 879 F. Supp. 2d 1087, 1089 (C.D. Cal. 2012) ("Injunctions against any speech, even libel, constitute prior restraints: they prevent[] speech before it occurs, by requiring court permission before that speech can be repeated." (citation and internal quotation marks omitted)). Even in the few cases in which the Supreme Court has upheld a content-based injunction against speech, it has not been because the injunction was not a prior restraint, but because under the circumstances the restraint was deemed constitutionally permissible. *See Kingsley Books, Inc. v. Brown*, 354 U.S. 436, 441–42 (1957) (beginning its analysis with the notion that "'the protection even as to previous restraint is not absolutely unlimited,'" while recognizing that "the limitation [on such protection] is the exception" (quoting *Near*, 283 U.S. at 716)). Accordingly, we hold that an injunction against future speech based on an adjudication that the same or similar statements have been adjudicated defamatory is a prior restraint.[9]

However, "[l]abeling respondents' action a prior restraint does not end the inquiry." *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558 (1975). Notably, the U.S. Supreme Court has never approved a prior restraint in a defamation case. Chemerinsky, 57 SYRACUSE L. REV. at 167; *see, e.g.*, *Near*, 283 U.S. at 706 (invalidating statute allowing courts to enjoin publication of future issues of newspaper because previous editions were found to be "'chiefly devoted to malicious, scandalous

---

[9] The lack of a dispositive distinction between temporary and permanent injunctions as to the second category of injunctive relief requested is highlighted by the requirements that must be satisfied to obtain a temporary injunction. An applicant must "plead and prove," among other things, "a probable right to the relief sought." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). Absent a showing of a likelihood of success on the merits, a temporary injunction may not issue. *In re Newton*, 146 S.W.3d 648, 652 (Tex. 2004). While the standard to prevail at trial is certainly higher, the effect of the permanent injunction is the same: speech is restrained before it occurs.

and defamatory articles'"). However, the Court has not decided whether the First Amendment prohibits the type of injunction at issue in this case, leaving that question unsettled.[10] Turning to the issue of whether the injunction against future speech sought by Kinney, though a prior restraint, is nevertheless permissible under the Texas Constitution, we hold that it is not.

**B. Prior Restraints on Future Speech Related to Statements That Have Been Adjudicated Defamatory Violate the Texas Constitution**

Again, prior restraints bear a heavy presumption against their constitutionality. *Davenport v. Garcia*, 834 S.W.2d 4, 9 (Tex. 1992); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). The proponent of such restraints thus "carries a heavy burden of showing justification for the imposition of such a restraint." *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971). While prior restraints are plainly disfavored, however, the phrase itself is not a "self-wielding sword," but a demand for individual analyses of how prior restraints will operate. *Kingsley Books*, 354 U.S. at 441–42. In examining the propriety of injunctive relief, then, we bear in mind the category of speech sought to be enjoined and the effect of such relief on a person's liberty to speak freely.[11]

---

[10] The issue was presented to the Supreme Court in *Tory v. Cochran*. 544 U.S. 734 (2005). In that case, noted attorney Johnnie Cochran sued Ulysses Tory, a former client, after Tory began engaging in activities such as picketing Cochran's office and sending the attorney threatening letters due to Tory's dissatisfaction with Cochran's services. *Id.* at 735. Tory indicated that he would continue his activities barring a court order, and the trial court issued a permanent injunction against Tory's defamatory speech. *Id.* Tory appealed, presenting to the Supreme Court the very issue before us today. *Id.* at 737–38. However, Cochran died shortly after oral argument, and the Court sidestepped the question, holding that Cochran's death resulted in the injunction's "los[ing] its underlying rationale" of protecting Cochran from defamation. *Id.* at 738.

[11] The parties dispute whether Kinney waived his argument that defamatory speech is not "protected" speech under the Texas and U.S. Constitutions. We resolve this dispute by stating only that we cannot divorce the type and quality of speech at issue—in this case, defamatory speech—from the constitutionality of restraining it.

11

**1. Texas Law Comports with the Traditional Rule That Injunctive Relief Is Not Available in Defamation Actions**

"The traditional rule of Anglo-American law is that equity has no jurisdiction to enjoin defamation." Chemerinsky, 57 SYRACUSE L. REV. at 167 (explaining that the rule dates back to eighteenth-century England and was adopted "with remarkable uniformity" by nineteenth- and twentieth-century American courts); *see also, e.g.*, *Kramer v. Thompson*, 947 F.2d 666, 677 (3d Cir. 1991) ("[T]he maxim that equity will not enjoin a libel has enjoyed nearly two centuries of widespread acceptance at common law."). Our treatment of the temporary injunctions in *Ex parte Tucker* and *Hajek*, and more recent decisions on prior restraints, leave no doubt that the current state of Texas law is in accordance with this traditional rule with regard to future speech.

We have indicated that a prior restraint may be permissible "only when essential to the avoidance of an impending danger," *Davenport*, 834 S.W.2d at 9, and only when it is the least restrictive means of preventing that harm, *Ex parte Tucci*, 859 S.W.2d 1, 6 (Tex. 1993); *see also Hajek*, 647 S.W.2d at 255; *Ex parte Tucker*, 220 S.W. at 76.[12] We explained in *Tucker* the significant distinction between curtailing a person's liberty of speech, which the Texas Constitution forbids, and penalizing a person's abuse of that liberty, which the Constitution allows:

> The purpose of [Article I, Section 8] is to preserve what we call 'liberty of speech' and 'the freedom of the press,' and at the same time hold all persons accountable to the law for the misuse of that liberty or freedom. Responsibility for the abuse of the privilege is as fully emphasized by its language as that the privilege itself shall be free from all species of restraint. But the abuse of the privilege, the

---

[12] Applying that concept in the context of reviewing a gag order, we held in *Davenport* that such an order "will withstand constitutional scrutiny only where there are specific findings supported by evidence that (1) an imminent and irreparable harm to the judicial process will deprive litigants of a just resolution of their dispute, and (2) the judicial action represents the least restrictive means to prevent that harm." 834 S.W.2d at 10.

provision commands, shall be dealt with in no other way. It is not to be remedied by denial of the right to speak, but only by appropriate penalties for what is wrongfully spoken. Punishment for the abuse of the right, not prevention of its exercise, is what the provision contemplates. There can be no liberty in the individual to speak, without the unhindered right to speak. It cannot co-exist with a power to compel his silence or fashion the form of his speech. Responsibility for the abuse of the right, in its nature pre-supposes freedom in the exercise of the right. It is a denial of the authority, anywhere, to prevent its exercise.

220 S.W. at 76. Citing *Tucker*, we plainly stated in *Hajek* that "[d]efamation alone is not a sufficient justification for restraining an individual's right to speak freely." 647 S.W.2d at 255. Our courts of appeals have continued to recognize that the appropriate remedy for defamation is damages, not injunctive relief. *See, e.g.*, *Cullum v. White*, 399 S.W.3d 173, 189 (Tex. App.—San Antonio 2011, no pet.); *Brammer v. KB Home Lone Star, LP*, 114 S.W.3d 101, 108 (Tex. App.—Austin 2003, no pet.) ("Although the specific damages sustained from defamation and business disparagement-related activity is often difficult to measure, it is nonetheless well established that this type of harm does not rise to the level necessary for the prior restraint to withstand constitutional scrutiny.").

### 2. Injunctions Cannot Effectively Remedy the Harm Caused by Defamation Without Chilling Protected Speech

Contending that *Hajek* "ignored decades of intervening precedent from the U.S. Supreme Court," Kinney relies on Supreme Court case law upholding injunctions in the context of obscenity and commercial speech to argue that post-trial injunctions against defamatory speech are consistent with the First Amendment. In *Kingsley Books*, for example, the Supreme Court considered a New York statute that allowed municipalities to bar the continued sale of written and printed materials adjudicated obscene. 354 U.S. at 437. The Supreme Court upheld the statute, holding that it "studiously withholds restraint upon matters not already published and not yet found offensive." *Id.*

13

at 445. By contrast, the Court held, the statute struck down in *Near v. Minnesota* had empowered the courts "to enjoin the dissemination of future issues of a publication because its past issues had been found offensive." *Id.*

And in *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*, the Supreme Court upheld an administrative order prohibiting a newspaper from continuing to run gender-specific help-wanted ads pursuant to the enforcement of a local anti-discrimination law. 413 U.S. 376, 379 (1973). The Court concluded that the speech at issue constituted illegal commercial speech, holding that the injunction "d[id] not endanger arguably protected speech" and was therefore permissible. *Id.* at 390.

Even after these decisions, several courts addressing the issue presented here have continued to adhere to the traditional rule that defamation alone will not justify an injunction against future speech. *See Metro. Opera Ass'n v. Local 100*, 239 F.3d 172, 177 (2d Cir. 2001); *Oakley, Inc. v. McWilliams*, 879 F. Supp. 2d 1087, 1090 (C.D. Cal. 2012); *Tilton v. Capital Cities/ABC Inc.*, 827 F. Supp. 674, 681 (N.D. Okla. 1993) ("The fundamental law of libel in both Oklahoma and Texas is that monetary damages are an adequate and appropriate remedy and that injunctive relief is not available."); *New Era Publ'ns Int'l v. Henry Holt & Co.*, 695 F. Supp. 1493, 1525 (S.D.N.Y. 1988) ("[W]e accept as black letter that an injunction is not available to suppress defamatory speech."); *Demby v. English*, 667 So. 2d 350, 355 (Fla. Ct. App. 1995) (per curiam) (noting that the claim for injunctive relief was "frivolous" in light of the "well-established rule that equity will not enjoin either an actual or a threatened defamation" (citation and internal quotation marks omitted)); *Willing v. Mazzocone*, 393 A.2d 1155, 1157–58 (Pa. 1978) (holding that a permanent injunction against

14

defamatory speech violated a provision of the Pennsylvania Constitution that is substantially similar to Article I, Section 8 of the Texas Constitution). By contrast, a small number of states have cited the Supreme Court cases referenced above in holding that narrowly drawn, post-trial injunctions against defamatory speech are constitutional. *See Hill v. Petrotech Res. Corp.*, 325 S.W.3d 302 (Ky. 2010); *St. James Healthcare v. Cole*, 178 P.3d 696 (Mont. 2008); *Balboa Island Vill. Inn, Inc. v. Lemen*, 156 P.3d 339 (Cal. 2007); *Retail Credit Co. v. Russell*, 218 S.E.2d 54 (Ga. 1975); *O'Brien v. Univ. Cmty. Tenants Union, Inc.*, 327 N.E.2d 753 (Ohio 1975); *see also Lothschuetz v. Carpenter*, 898 F.2d 1200 (6th Cir. 1990).

In *Balboa*, for example, the trial court found that Lemen had made defamatory statements about the Balboa Village Inn and issued a permanent injunction prohibiting her from engaging in numerous acts, including repeating those statements. 156 P.3d at 342. The California Supreme Court described *Kingsley Books* and *Pittsburgh Press* as holding that "an injunctive order prohibiting the repetition of expression that had been judicially determined to be unlawful did not constitute a prohibited prior restraint of speech." *Id.* at 346–47. The court concluded that, while the particular injunction at issue in *Balboa* was overbroad, a court may issue an injunction prohibiting a person from repeating statements that have been adjudicated defamatory following a trial on the merits. *Id.* at 349–50.

We do not read *Kingsley Books* and *Pittsburgh Press* so broadly and decline to extend their holdings to the defamation context. To that end, we agree with the district court in *Oakley* that injunctions against defamation are impermissible because they are necessarily "ineffective,

15

overbroad, or both." 879 F. Supp. 2d at 1090. That is, "[a]ny effective injunction will be overbroad, and any limited injunction will be ineffective." Chemerinsky, 57 SYRACUSE L. REV. at 171.

On the one hand, for any injunction to have meaning it must be effective in its purpose. *See Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 565 (1976) (assessing "the probable efficacy of prior restraint on publication as a workable method" of accomplishing its purpose); *N.Y. Times Co. v. United States*, 403 U.S. 713, 744 (1971) (Marshall, J., concurring) ("It is a traditional axiom of equity that a court of equity will not do a useless thing . . . ."). The narrowest of injunctions in a defamation case would enjoin the defamer from repeating the exact statement adjudicated defamatory. Such an order would only invite the defamer to engage in wordplay, tampering with the statement just enough to deliver the offensive message while nonetheless adhering to the letter of the injunction. Kinney admitted as much at oral argument, agreeing that the injunction he is seeking would extend to speech that was "substantially the same" or made "non-substantive changes" to the statement that has been adjudicated defamatory.

But expanding the reach of an injunction in this way triggers the problem of overbreadth. Overbroad restrictions on speech are unconstitutional because of their potential to chill protected speech. *See Comm'n for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 435 (Tex. 1998) ("An overbroad statute sweeps within its scope a wide range of both protected and non-protected expressive activity." (citation and internal quotation marks omitted)); *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 237 (2002) ("The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process."). In the defamation context, the concern is that in prohibiting speech found to be

defamatory, the injunction unreasonably risks prohibiting nondefamatory speech as well. *See Lawson v. Murray*, 515 U.S. 1110, 1114 (1995) (Scalia, J., concurring in denial of writ of certiorari) ("The danger that speech-restricting injunctions may serve as a powerful means to suppress disfavored views is obvious enough even when they are based on a completed or impending violation of law.").

The particular difficulty in crafting a proper injunction against defamatory speech is rooted in the contextual nature of the tort. In evaluating whether a statement is defamatory, the court construes it "as a whole in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement." *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 655 (Tex. 1987). Given the inherently contextual nature of defamatory speech, even the most narrowly crafted of injunctions risks enjoining protected speech because the same statement made at a different time and in a different context may no longer be actionable. Untrue statements may later become true; unprivileged statements may later become privileged.

Kinney dismisses this concern, arguing that in such a scenario the defamer "could speak confident in the knowledge that [the enjoined statement is] no longer defamatory." But how confident could such a speaker be when he is bound by an injunction *not* to speak? The California Supreme Court suggested in *Balboa* that "[i]f such a change in circumstances occurs, [the] defendant may move the court to modify or dissolve the injunction." 156 P.3d at 353. We think it is no answer that a person must request the trial court's permission to speak truthfully in order to avoid being held in contempt. *See Pittsburgh Press*, 413 U.S. at 390 ("The special vice of a prior restraint is that communication will be suppressed, either directly or by inducing excessive caution in the speaker,

17

before an adequate determination that it is unprotected by the First Amendment."); *see also Balboa*, 156 P.3d at 357 (Kennard, J., dissenting) ("Requiring a citizen to obtain government permission before speaking truthfully is 'the essence of censorship' directly at odds with the 'chief purpose' of the constitutional guarantee of free speech to prevent prior restraints." (quoting *Near*, 283 U.S. at 713, and *Kingsley Books*, 354 U.S. at 445)).

These concerns apply even more forcefully to an injunction that goes beyond restraining verbatim recitations of defamatory statements and encompasses statements that are "substantially similar." Subtle differences in speech will obscure the lines of such an injunction and make it exceedingly difficult to determine whether a statement falls within its parameters. *Balboa*, 156 P.3d at 356 (Kennard, J., dissenting in part); *Oakley*, 879 F. Supp. 2d at 1091 (noting that "a 'similar statement' standard would require a court enforcing the injunction to continuously decide whether new statements by a persistent defendant were sufficiently similar"). For example, let us imagine a trial court enjoins a defendant from repeating the defamatory statement "John Smith sells handguns to minors," as well as similar statements. Can the defamer state more generally that Smith is engaged in the business of illegal gun sales or that Smith's business contributes to the nationwide problems with school shootings? Can the word "handgun" be changed to "shotgun"?[13]

---

[13] The *Oakley* court proposed the following conundrum:

> If a court enjoined the word "thief," would related words like pilferer, looter, pillager, plunderer, poacher, and rustler also support the finding of willfulness necessary to hold the speaker in contempt? How about bandit? Pirate? What about phrases, e.g., "she was in the habit of converting other people's property to her own property?" Or further into abstraction, "she may take liberties with your property" or "count your silverware after she leaves your home?"

879 F. Supp. 2d at 1091.

These uncertainties highlight the inapplicability of the Supreme Court's obscenity cases. A permanent injunction restraining a theater owner from screening a film adjudicated to be obscene clearly applies only to that film, and others may be shown without the fear of contempt sanctions. *See Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 55–56 (1973) (upholding statute allowing civil injunction restraining exhibition of two films following adjudication that the films were obscene). *Pittsburgh Press*, while it involved commercial speech rather than obscenity, is similarly distinguishable. In that case, as noted above, the Supreme Court upheld an administrative order prohibiting a newspaper from continuing a practice of running gender-specific help-wanted ads pursuant to the enforcement of a local anti-discrimination law. 413 U.S. at 389–90. The Court stressed, however, that the order upheld could not be punished with contempt proceedings and "d[id] not endanger arguably protected speech" because it did not require speculation as to the effect of publication. *Id.* at 390 & n.14. As discussed above, this certainty does not translate to the defamation context, in which the task of crafting an effective injunction against future speech risks enjoining constitutionally protected speech to an unacceptable degree.

By contrast, no such concerns arise when courts issue speech-related injunctions that are not prior restraints, such as ordering the deletion of defamatory statements posted on a website. There is a legally cogent division between mandatory injunctions calling for the removal of speech that has been adjudicated defamatory and prohibitive injunctions disallowing its repetition. The latter impermissibly chills protected speech; the former does not. The distinction thus arms trial courts with an additional tool to protect defamed parties while ensuring the State does not infringe upon the fundamental right to free speech guaranteed by Article I, Section 8.

19

Accordingly, we hold that the Texas Constitution does not permit injunctions against future speech following an adjudication of defamation. Trial courts are simply not equipped to comport with the constitutional requirement not to chill protected speech in an attempt to effectively enjoin defamation. Instead, as discussed below, damages serve as the constitutionally permitted deterrent in defamation actions.

### C. Damages Are Generally the Proper Remedy for Defamation

In keeping with Texas's longstanding refusal to allow injunctions in defamation cases, the well-settled remedy for defamation in Texas is an award of damages. *Ex parte Tucker*, 220 S.W. at 75–76; *Cullum*, 399 S.W.3d at 189; *Brammer*, 114 S.W.3d at 108. This can include economic damages like lost income, noneconomic damages like loss of reputation and mental anguish, and even punitive damages upon a finding of actual malice. *Hancock v. Variyam*, 400 S.W.3d 59, 65–66 (Tex. 2013). And imposition of damages has long been held to be an effective tool against defamers. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 277 (1964) ("The fear of damage awards . . . may be markedly more inhibiting than the fear of prosecution under a criminal statute.").

Kinney raises the concern that a victim of defamatory speech by a judgment-proof, serial defamer can obtain no remedy in damages. Damages may not deter the serial defamer, either because she lacks the funds to pay the damages or because she has so much money that paying a series of fines is immaterial to her. It is also easy to imagine a scenario in which an award of damages, even if collectible, will not provide complete relief to the defamed plaintiff. Imagine a statement falsely accusing a person of pedophilia, for example. Presumably, an order prohibiting the statement from being repeated would be of paramount importance to the plaintiff. This scenario

was discussed at length in *Balboa*, the logic of which does not escape us. 156 P.3d at 351 ("Thus, a judgment for money damages will not always give the plaintiff effective relief from a continuing pattern of defamation."). However, the constitutional protections afforded Texas citizens are not tied to their financial status. *See, e.g.*, *id.* at 358 (Kennard, J., concurring) ("[N]either this nor any other court has ever held that a defendant's wealth can justify a prior restraint on the constitutional right to free speech."). As the Pennsylvania Supreme Court concluded in *Willing*, "[w]e cannot accept . . . that the exercise of the constitutional right to freely express one's opinion should be conditioned upon the economic status of the individual asserting that right." 393 A.2d at 1158. Yet, conditioning the allowance of prior restraints on a defendant's inability to pay a damage award would do just that.

Moreover, the concern that damages will not provide an effective remedy in defamation cases is not a new one, but we have never deemed it sufficient to justify a prior restraint. For example, in defamation *per se* cases, nominal damages, not injunctive relief, are awarded when actual damages are difficult to prove or are not claimed because "'the action is brought for the purpose of vindicating the plaintiff's character by a verdict of a jury that establishes the falsity of the defamatory matter.'" *Hancock*, 400 S.W.3d at 65 (quoting RESTATEMENT (SECOND) OF TORTS § 620 cmt. a (1977)). And the Supreme Court has expressly recognized that the potential inadequacy of damages as a remedy for defamation does not open the door to additional relief, stating: "The destruction that defamatory falsehood can bring is, to be sure, often beyond the capacity of the law to redeem. Yet, imperfect though it is, an action for damages is the only hope for vindication or redress the law gives to a man whose reputation has been falsely dishonored." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 22–23

(1990) (citation and internal quotation marks omitted). Applying the same reasoning, we too decline to open the door to prior restraints in this context.

## D. The Advent of the Internet

Finally, we address Kinney's argument that the Internet is a game-changer with respect to the issue presented because it "enables someone to defame his target to a vast audience in a matter of seconds." The same characteristics that have cemented the Internet's status as the world's greatest platform for the free exchange of ideas, *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 870 (1997)—the ease and speed by which any person can take on the role of the town crier or pamphleteer—have also ignited the calls for its receiving lesser protection. *See, e.g.*, Lyrissa Barnett Lidsky, *Silencing John Doe: Defamation and Discourse in Cyberspace*, 49 Duke L.J. 855, 863–64 (Feb. 2000).

However, the Supreme Court has steadfastly refused to make free speech protections a moving target, holding that "[w]e must decline to draw, and then redraw, constitutional lines based on the particular media or technology used to disseminate political speech from a particular speaker." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 326 (2010). And, with respect to the advent of the Internet, the Court has gone further in championing its role as an equalizer of speech and a gateway to amplified political discourse, holding in *Reno* that there is "no basis for qualifying the level of First Amendment scrutiny that should be applied to this medium." 521 U.S. at 870. In this way, the Supreme Court has taken a definitive stance guaranteeing equal First Amendment protection for speech over the Internet. The Court has also recognized that damages, while "imperfect," are the remedy the law gives to defamation victims. *Milkovich*, 497 U.S. at 22–23

22

(citation and internal quotation marks omitted). We are not persuaded that the policy concerns that Kinney raises justify enjoining defamatory speech in a manner that substantially risks chilling constitutionally protected speech.

One final note is warranted in response to Kinney's assertion that the case for injunctive relief is made more compelling by the need to address the phenomena of cyber-bullying and online hate speech. It is enough to say that neither of those is at issue here. Today we simply continue to hold that "[d]efamation *alone* is not a sufficient justification for restraining an individual's right to speak freely." *Hajek*, 647 S.W.2d at 255 (emphasis added). But as discussed above, we have never held that all injunctions against future speech are *per se* unconstitutional, recognizing that they may be warranted to restrain speech that poses a threat of danger. *Id.* We need not and do not address the propriety of a requested injunction against speech that is not at issue, nor should we without analyzing the facts and circumstances underlying such a request.

### III. Conclusion

In evaluating whether state action exceeds constitutional bounds governing freedom of speech, courts "must give the benefit of any doubt to protecting rather than stifling speech." *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 469 (2007). We hold that, while a permanent injunction requiring the removal of posted speech that has been adjudicated defamatory is not a prior restraint, an injunction prohibiting future speech based on that adjudication impermissibly threatens to sweep protected speech into its prohibition and is an unconstitutional infringement on Texans' free-speech rights under Article I, Section 8 of the Texas Constitution. Because the trial court concluded that no injunction of any kind would be permissible, the court erred

23

in granting summary judgment to the extent Kinney's requested injunction did not constitute a prior restraint. We therefore reverse the court of appeals' judgment and remand the case to the trial court for further proceedings consistent with this opinion.

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** August 29, 2014