**Opinion issued December 31, 2019**



In The

# Court of Appeals

For The

# First District of Texas

——————————

## NO. 01-18-00790-CV

——————————

**THANG BUI AND BACH HAC NGUYEN, Appellants**

**V.**

**MAYA  DANGELAS, Appellee**

**On Appeal from the 152nd District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-55787**

## MEMORANDUM OPINION

This is the second interlocutory appeal Thang Bui and Monique Nguyen have brought to challenge rulings made by the trial court in a defamation suit brought against them by Maya Dangelas. Their first interlocutory appeal challenged the trial court's denial of their motion to dismiss Dangelas's suit under

the Texas Citizens Participation Act.[1] After concluding that Dangelas met her burden to make a prima facie showing that Bui and Nguyen's Facebook posts about her were defamatory and made with malice, we affirmed the denial of their TCPA motion.[2]

This second interlocutory appeal challenges the temporary injunction issued against Bui and Nguyen that required them to delete existing Facebook posts if they either (1) "encourag[ed] that violence be inflicted on [Dangelas] or her family" or (2) provided Dangelas's "address or the addresses of her family members." The temporary injunction states that it issued "to preserve the status quo between the parties pending a trial on the merits" and to protect Dangelas's right to, among other things, "physical safety."

In four issues, Bui and Nguyen contend the trial court abused its discretion in issuing the temporary injunction. The thrust of their complaint is expressed in the following statement from their appellate brief: "Damages, and not prospective injunctive relief, serve as the constitutionally permitted deterrent in defamation actions." Here, though, the trial court's injunctive order did not grant prospective injunctive relief. And there was evidence of concerns about physical harm in

---

[1] *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011.

[2] For additional background information concerning the Facebook posting by Bui and Nguyen as well as responsive postings by others in the Vietnamese-American refugee community, *see Bui v. Dangelas*, No. 01-18-01146-CV, 2019 WL 5151410 (Tex. App.—Houston [1st Dist.] Oct. 15, 2019, no pet. h.) (mem. op.).

response to the Facebook posts that supported returning the parties to the status quo until the defamatory nature of the posts could be litigated.

Because the trial court did not abuse its discretion in granting the temporary injunction, we affirm.

## Standard of Review

A temporary injunction preserves the status quo of litigation's subject matter pending trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993). A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Butnaru*, 84 S.W.3d at 204; *Walling*, 863 S.W.2d at 57. To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204; *Walling*, 863 S.W.2d at 57. An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204. Whether to grant or deny a temporary injunction is within a trial court's sound discretion. *Id.* A reviewing court will reverse an order granting injunctive relief if the trial court abused its discretion. *Id.*; *Walling*, 863 S.W.2d at 58.

**Whether the Status Quo was**
**Before or After Bui and Nguyen's Posts were Published**

A temporary injunction does not determine the rights of the parties or the merits of their claims but, instead, merely preserves the status quo until those rights may be determined upon final trial on the merits. *Butnaru*, 84 S.W.3d at 204; *City of San Antonio v. Hamilton*, 180 S.W. 160, 162 (Tex. Civ. App.—San Antonio 1915, no writ). The status quo is defined as the last actual, peaceable, noncontested status that preceded the pending controversy. *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004). "If an act of one party alters the relationship between that party and another, and the latter contests the action, the status quo cannot be the relationship as it exists after the action." *Benavides Indep. Sch. Dist. v. Guerra,* 681 S.W.2d 246, 249 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.); *Layton v. Ball*, 396 S.W.3d 747, 753 (Tex. App.—Tyler 2013, no pet.).

Bui and Nguyen argue that the moment in time that should be considered the status quo is after they published their Facebook posts, meaning that a temporary injunction could not require the parties to return to positions that pre-dated publication of posts about Dangelas on Facebook. This is similar to the argument rejected in *Layton*.

In *Layton*, the owners of a shooting range challenged an injunction order that restricted their operation of the shooting range, arguing that the status quo was the ongoing operation of the business because it was already in operation when nearby

4

homeowners filed suit to close it. 396 S.W.3d at 754. The shooting range owners' argument erroneously "presupposes that the activity conducted on the date suit was filed necessarily controls the status quo determination." *Id.* Instead, "the status quo is the last actual, peaceable, noncontested status that preceded the controversy." *Id.* Just because it may have taken time "before the danger became apparent" and suit was brought, the delay does "not necessarily fix the status quo on the date suit was filed." *Id.* On appeal, the reviewing court held that the trial court did not abuse its discretion in determining that "the last actual, peaceable, noncontested status that preceded the controversy was prior to the property's use as a shooting range." *Id.* Similarly, here, the last actual, peaceable, noncontested status that preceded the controversy between Bui and Nguyen on the one hand and Dangelas on the other was before Bui and Nguyen posted inflammatory accusations about Dangelas on Facebook that evoked responsive posts threatening violence against Dangelas.

Bui and Nguyen admit they have never met Dangelas. Their connection to her is limited to their having researched her on the internet, developed theories about her political and ideological beliefs and family dynamics, and then espoused those theories online, accusing her of being a Viet Cong operative funneling communist money into the United States to bribe locals, support communist causes, and harm the local Vietnamese-American refugee population. There was peace—in fact, zero connection—between the parties before Bui and Nguyen

5

published their accusations online. And it was their posts that prompted the safety concerns for Dangelas and her children as threats of bodily harm filled their replies. Here, the status quo was the period before Bui and Nguyen's posts were uploaded onto Facebook alleging Dangelas was an international spy who would harm the Vietnamese-American refugee community, eliciting threats of violence against her, and providing her home address to those provoked to violence.

We reject Bui and Nguyen's contention that the status quo to which the temporary injunction would return the parties could not pre-date the publication of their Facebook posts. This argument provides no basis for overturning the injunction order.

### Whether the Temporary Injunction Impermissibly Grants "Prospective Injunctive Relief"

Bui and Nguyen rely on *Kinney v. Barnes*, 443 S.W.3d 87 (Tex. 2014), to argue that injunctive relief cannot issue in a suit for defamation. *Kinney* is an expansive Texas Supreme Court opinion that grapples with the intersection of judicial determinations of defamation and prospective injunctions seeking to prevent future speech. *Id.* at 98–101. That is not the situation here. The trial court's injunction is not a prohibitive injunction that restrains future speech. It is, instead, a mandatory injunction that required an act—specifically, the deletion of two specific categories of Facebook posts already published. *See id.* at 99 (discussing "cogent division" between mandatory injunctions calling for removal of speech

6

and prohibitive injunctions disallowing future speech). The holding in *Kinney* regarding the remedy of prospective injunctions to restraint future speech is inapplicable to these facts. *See id.*; *Landry's, Inc. v. Animal Legal Def. Fund*, 566 S.W.3d 41, 66–67 (Tex. App.—Houston [14th Dist.] 2018, pet. granted) (likewise noting distinction between prospective injunctions and mandatory injunctions in context of defamation suit); *Cummins v. Bat World Sanctuary*, No. 02-12-00285-CV, 2015 WL 1641144, at *26 (Tex. App.—Fort Worth Apr. 9, 2015, pet. denied) (same).

This suit does not involve prospective injunctions. There is no basis to overturn the injunctive order on this basis.

### Whether a Justiciable Controversy Exists with regard to the Deletion of Facebook Posts that Encourage Violence

Bui and Nguyen present various arguments why the First Amendment prevents the issuance of a temporary injunction requiring them to delete posts that encourage violence against Dangelas. One might infer from their arguments that Bui and Nguyen are challenging this restriction because they seek to resurrect deleted posts that might call for violence. But their pleadings negate that inference.

In pleadings to this Court, Bui and Nguyen have asserted that their Facebook posts did not threaten Dangelas or encourage violence against her in any way; instead, other people replied to Bui and Nguyen's posts with perceived calls for violence that Bui and Nguyen claim not to have endorsed. Bui and Nguyen do not

7

point to any particular posts of theirs that they have removed as responsive to the description of "encouraging that violence by inflicted on [Dangelas] or her family." Further, in their brief, they confirm that they do not intend to publish posts in the future to encourage violence against Dangelas or her family regardless of the outcome of this appeal.

Bui and Nguyen may have removed some of their own posts in the process of removing potentially threatening replies they received, but their argument has always been that their own posts were not threatening and did not encourage violence.[3] Thus, on this record, it is unclear that the temporary injunction actually required the deletion of any past speech by Bui and Nguyen. Bui and Nguyen point to none.

To the extent Bui and Nguyen deleted their own posts because those posts received replies that were threatening to Dangelas, we see two insurmountable

---

[3] Bui and Nguyen agree that true threats are not protected by the First Amendment. *See Virginia v. Black*, 538 U.S. 343, 359 (2003) (stating that First Amendment leaves states free to ban speech amounting to a "true threat"). True threats include statements in which the speaker communicates an intent to commit an act of unlawful violence to a particular individual or group of individuals, regardless of whether the speaker actually intends to carry out the threat. *Id.* at 359–60. Even if the threat of violence is a subjectively false, it is not worthy of constitutional protection. *See, e.g.*, *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974) (discussing defamation and First Amendment); *Schenck v. United States*, 249 U.S. 47, 52 (1919) (no First Amendment right to falsely yell "fire" in a crowded theater); *Garcia v. State*, 583 S.W.3d 170, 175 (Tex. App.—Dallas 2018, pet. ref'd) (concluding that Facebook post that pondered shooting police officers was unprotected true threat and that First Amendment did not insulate against prosecution under Texas Penal Code section 22.07(a)(1) for making a terroristic threat).

problems with Bui and Nguyen seeking to overturn the temporary injunction as to that narrow category of posts. First, Bui and Nguyen have made no legal argument supported by citation to legal authority regarding how the First Amendment protects against deletion of someone else's threatening post made in reply to one's own post. *See* TEX. R. APP. P. 38.1(i). Second, their argument fails to account for the ability, within Facebook, to delete another's reply without also deleting one's own post.[4] Bui and Nguyen had the technical ability to delete others' threatening replies without also deleting their own non-offending posts, and they do not argue that their own First Amendment rights protect against such deletions.

We conclude that Bui and Nguyen have not presented a justiciable controversy related to the portion of the temporary injunction that required the deletion of posts "encouraging that violence by inflicted on [Dangelas] or her family." The scope of the temporary injunction was precise, requiring deletion of only those posts that "encourage[d] . . . violence" against Dangelas and her family. Bui and Nguyen's position is that their own past posts did not encourage violence. They fail to identify any of their own past posts that they deleted to comply with the temporary injunction order. They further fail to articulate a legal argument or cite to legal authority for First Amendment protections for others'

---

[4]     *See, e.g.*, Harry Guinness, *How to Remove Other People's Comments from Your Facebook Posts*, https://www.howtogeek.com/311121/how-to-remove-other-people%E2%80%99s-comments-from-your-facebook-posts/ (How-To Geek, July 12, 2017).

posts made in reply to their own posts, to the extent they deleted others' threatening posts. In sum, Bui and Nguyen have not shown that the injunction against posts that encourage violence affected them or required deletion of particular posts they published. Without any showing that the backward-looking-only injunction impacted them, and having acknowledged that the injunction does not restrict their future actions or speech, Bui and Nguyen have not presented any basis to challenge this portion of the injunction. *See Russell v. Metro. Transit Auth. of Harris Cty.*, 343 S.W.3d 825, 833 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("For a justiciable controversy to exist, there must be a real and substantial controversy involving a genuine conflict of tangible interests and not merely a theoretical dispute.").

### Whether the Trial Court Erred in Including within the Temporary Injunction a Provision Requiring the Deletion of Facebook Posts that Announced Dangelas's Addresses

The only other category of Facebook posts the temporary injunction required to be deleted were those "mentioning [Dangelas]'s address or the addresses of her family members." Bui and Nguyen argue that the publication of a person's address is not a threat, is not defamatory, and is not subject to mandated deletion because it enjoys First Amendment protections. Their argument ignores the connection established by Dangelas at the temporary injunction hearing and accepted by the

10

trial court through its injunctive order between the challenged posts and Dangelas's recognized safety concerns.

To obtain injunctive relief, one must establish a probable imminent and irreparable injury before trial on the merits can be completed. *Butnaru*, 84 S.W.3d at 204. This requirement includes elements of imminent harm, irreparable injury, and no adequate remedy at law. *Shor v. Pelican Oil & Gas Mgmt., LLC*, 405 S.W.3d 737, 750 (Tex. App.–Houston [1st Dist.] 2013, no pet.). An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204; *Savering v. City of Mansfield*, 505 S.W.3d 33, 49 (Tex. App.—Fort Worth 2016, pet. denied).

Dangelas's cause of action is defamation. She presented evidence of posts published by Bui and Nguyen indicating that Dangelas is a Viet Cong spy living among the Vietnamese-American refugee population intending to further communist objectives and undermine the community. She presented evidence that these accusations alarmed some in the Vietnamese-American community and resulted in reply posts that called for violence against Dangelas and her children. In that context, with threatening posts abounding, Bui and Nguyen continued to post about Dangelas, making additional accusations of communist sympathies and also

11

publishing the home address for Dangelas and her youngest daughter as well as the home address for each of her older daughters.

The potential irreparable injury that Dangelas sought to avoid through the issuance of an injunction was not merely the damage to her reputation that might occur because Bui and Nguyen's posts were defamatory. The predominate potential injury was the danger that irreparable physical harm might result.

If Bui and Nguyen's posts are later determined to be defamatory at the trial on the merits, they will be devoid of First Amendment protections and subject to removal. *See Kinney*, 443 S.W.3d at 93; *Landry's*, 566 S.W.3d at 66–67. With their removal, those who would promote violence against accused Viet Cong spies would have to actively search elsewhere for targets for their ire instead of passively relying on the fortuitous public listing of a home address where this particular alleged Viet Cong spy could be found. We cannot agree that Dangelas must wait until the defamatory nature of Bui and Nguyen's posts is determined to obtain judicial relief from the possibility of violence against her should someone use the provided address to cause harm.

The posts at issue in this suit are distinguishable from those discussed in *Kinney* and *Landry's* in that these parties concede Bui and Nguyen's posts were met with calls for violence against Dangelas. It was in that context that Bui and Nguyen provided Dangelas's home addresses, relieving any would-be violent

12

perpetrator of the need to investigate and obtain such information on their own, should they resolve to act on their violent threats. This is dangerous. And it was within the trial court's equitable powers to address the probable risk of irreparable injury—in the form of physical violence—through issuance of a narrow temporary injunction to remove posts identifying Dangelas's home address in the context of active threats against her by others. *See Rhodia, Inc. v. Harris Cty.*, 470 S.W.2d 415, 419–20 (Tex. Civ. App.—Houston [1st Dist.] 1971, no writ) (discussing equitable injunction powers available to courts to issue temporary mandatory injunctions addressed to safety and health). Further, this aspect of the temporary injunction assisted in returning the parties to the status quo before inflammatory accusations were made about Dangelas by Bui and Nguyen, others replied with threats of violence against Dangelas and her family, and Bui and Nguyen supplied the location where the Dangelas family could be found.

The injury the temporary order addressed by requiring the deletion of posts announcing Dangelas home addresses went beyond reputational damages to include irreparable physical harm from violence, and it issued in response to articulated, documented threats made in reply-posts to allegedly defamatory speech. In that context, the trial court's equitable powers permit the return of the parties to the status quo through a narrow mandatory injunction requiring the removal of posts identifying Dangelas's home addresses to those who have

13

announced threats of violence against her and her family. An injunction can issue to return the parties to the status quo and protect against the danger of violence as the parties await determination of the merit of the claims. *See id.*; *Int'l Ladies' Garment Workers' Local Union No. 123 v. Dorothy Frocks Co.*, 95 S.W.2d 1346, 1349 (Tex. Civ. App.—San Antonio 1936, no writ) (concluding that trial court did not abuse its discretion in granting temporary injunction that temporarily limited free speech picketing after receiving evidence of potential for violence, and noting that "courts of equity are vested with power and authority to act promptly and effectively in emergencies to protect" those involved and that "the rights of all parties can be tried out on the merits in due course").

Here, the trial court received evidence of the real possibility of physical harm to Dangelas and her children because some portion of the Vietnamese-American refugee population had read Bui and Nguyen's unsubstantiated accusations, expressed their belief that violence was an appropriate response, and had been given the address to engage in violent acts against Dangelas and her children. Dangelas met her burden of demonstrating a probable, irreparable physical injury if the posts identifying her home addresses were not removed through injunctive relief.

Trial courts have broad discretion to grant temporary injunctions to provide for the safety of parties involved and to maintain the status quo until rights may be

14

judicially determined. *See Rhodia, Inc.*, 470 S.W.2d at 419. The trial court did not abuse its discretion in issuing a narrow mandatory injunction requiring the removal of posts identifying Dangelas's home address and that of her daughters in the context of active statements of threats of violence against Dangelas in the accompanying posts and surrounding online conversations.

## Conclusion

Having concluded that the trial court did not abuse its discretion in granting a temporary mandatory injunction that requires the deletion of already-published Facebook posts if they meet either of two discrete criteria for the purpose of addressing a concern of physical safety, we affirm.

This is an interlocutory appeal. The resolution of the underlying merits of the defamation suit are not before this Court at this time.[5] The suit is remanded to the trial court for additional proceedings.

Sarah Beth Landau
Justice

Panel consists of Chief Justice Radack and Justices Landau and Hightower.

---

[5] The final issue raised in Bui and Nguyen's interlocutory appeal is whether there was evidence of their actual malice to meet the standard for a probable right to relief in support of a temporary injunction. Because we have already determined that Dangelas made a prima facie showing of actual malice in the related case, *Bui*, 2019 WL 5151410, at *10, we do not reach Bui and Nguyen's final issue.

15